[Crim. No. 21378. Second Dist., Div. Five. Sept. 25, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD HALL DEES, Defendant and Appellant.

## COUNSEL

Karl K. Ransom for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert F. Katz and Donald F. Roeschke, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—By information, defendant was charged with a violation of Health and Safety Code section 11530.5 (possession of marijuana for sale). He pleaded not guilty, and his Penal Code section 1538.5 motion was submitted on the transcript of the preliminary hearing, argued, and denied. Defendant waived his right to jury trial, to confront witnesses, to have witnesses testify for him, to present other evidence, and his right against self-incrimination, and submitted the issue of his guilt on the preliminary hearing transcript. He was found guilty as charged; motion for new trial was denied; probation was denied; and he was sentenced to state prison

for the term prescribed by law. A stay of execution of sentence was granted pending determination of his appeal, and bail on appeal was posted. He appeals from the judgment of conviction and order denying probation.

At approximately 3 a.m. on September 2, 1970 and after police investigation, State Narcotics Agent Reyes, in the company of eight other officers, met still other officers on defendant's premises, served him with a search warrant covering those premises (a warehouse), and advised him of his *Miranda* rights. Defendant was not asked if he wanted an attorney present, or if he would waive those rights; nor did defendant expressly waive them.[1]

Some two hours prior to the serving of the warrant, Vernon Police Officer Wilcox (who had been acquainted with defendant for several years and who had knowledge of the investigation) informed Torrance officers that defendant was at the location, and asked whether "they wanted him detained [in or around the premises] if he attempted to leave." The answer received was to "[i]n some manner . . . detain [defendant] for the arrival of the warrant and the narcotics investigators." When defendant "got in his car and started to leave," Wilcox approached him, and for the purpose of detaining him in the area Wilcox engaged him in conversation on the pretext of obtaining from defendant candy for a birthday party. Defendant responded ("in essence"), "Come on back to the warehouse," and they entered. During this time, Wilcox received several radio communications, and he related to his dispatcher that he had, in effect, "intercepted [defendant] or stopped him, had detained him, and [defendant] was remaining in the area." When "the conversation between [Wilcox and defendant] was exhausted, . . . [defendant] said he was going to head for home," and as they started out the door, Vernon Sergeant Sweeney arrived outside. Wilcox testified that after introduction of Sweeney to defendant, defendant said ("in some essence") that he was going to go home, was tired, and that Sergeant Sweeney stated something like, "There [are] some narcotic officers coming up here. They'd like to talk to you. Would you wait around for a few minutes?," and defendant replied something to the effect, "No, [*sic*] I will stick around." At no time did Wilcox tell defendant that he couldn't leave the location; nor did Wilcox hold him there by force or restraint during

---

[1] Defense counsel objected "to anything that transpired after the advisement of the rights on the grounds there was no waiver of [defendant's] rights to counsel" and stated "[defendant] was not afforded the opportunity pursuant to those rights to obtain counsel and, consequently, anything after that is inadmissible." The court overruled the objection, stating: ". . . . The *Miranda* rights we are talking about do not extend to the execution of a search warrant. It only extends to protecting the defendant from making any statements out of his own mouth which might tend to incriminate him or might be in the nature of a confession, admission, or indicates some criminal activity . . . ."

the 15 or 20 minutes Wilcox conversed with defendant to "detain him in the area." Wilcox was in uniform and armed, and his Vernon police unit was equipped with red light, siren, and other police equipment.

Vernon Police Sergeant Sweeney testified that around 9 p.m. on September 1, 1970, the Huntington Beach Narcotic Detail informed him that they were going to obtain a warrant to search defendant's premises, and he replied that he would assist them. Sweeney went to defendant's premises around 12:30 or 1 a.m. on September 2, prior to the arrival of the Huntington Beach Detail and state narcotic officers with the warrant, which was sometime after 3 a.m. After about 20 minutes of his surveillance of the premises, Wilcox and defendant exited, walking toward him, and when they all came together, Wilcox introduced him to defendant and there was some small conversation. Defendant walked to his car, with words to the effect that he "intended to go to his vehicle and go forth to his domicile," whereupon Sweeney stated to defendant: "Tiny, there are some State Narcotic officers on their way down to talk to you or have a conversation with you. Would you mind waiting?," and defendant replied, "No, not at all." Thereafter, defendant made no request to leave.

State Narcotics Agent Reyes testified that after he served defendant with a copy of the search warrant and advised him of his rights, at that point he asked defendant "if he would unlock the doors so we could search the premises [the warehouse]." Thereafter, in a location within the warehouse where there was a wall safe, Reyes asked defendant if he had the safe-combination,[2] and defendant replied, "No." Defendant then said he wanted to talk to Reyes, and Reyes asked the other officers to leave them, which they did. Reyes closed the door, and again advised defendant of his right to remain silent, to have an attorney present during any questioning, and that if he could not afford an attorney, one would be obtained for him; Reyes then asked defendant if he understood those rights, and he replied, "Yes," and Reyes advised him that anything he said could be used against him. Reyes then explained the search warrant and that it was issued "because we felt . . . that there was contraband, mainly marijuana, within the premises." Defendant merely sat there and did not reply. Reyes continued talking, and again asked defendant, "Do you have the combination to the safe?" and defendant did not reply. Reyes then told defendant: "Tiny, if you have the combination, I'd appreciate it if you would open it because you know we are going to get in there." Defendant then replied, "Other people besides myself have the combination." Reyes then again

---

[2]Defense counsel asked that the testimony "about to be elicited be subject to a motion to strike for the purpose of expediency," and the motion was subsequently submitted and denied.

asked him "to open the safe, and [defendant] stood up . . . removed a set of keys from his pocket and placed them on a cabinet in front of the safe. . . . He turned the dial and then turned the handle and stood back." Reyes then had one of the officers open the door. In the vault were numerous boxes on the shelves containing kilograms of marijuana, which were removed by the officers. At the rear of the vault there was a cabinet secured by a padlock; Reyes pried off the hinge, and approximately 100 kilograms of marijuana were uncovered, and these were also[3] confiscated. Defendant remained outside the vault during these proceedings. A vial containing several tablets resembling Benzedrine was found on defendant's desk. One of the keys which defendant had placed on the cabinet fit the padlock on the door from which Reyes removed the hinge.

## Contentions

Defendant first contends that "[t]he provisions of Penal Code § 841[4] were not complied with as appellant had been detained by police officers to such an extent as to deprive him of his freedom of movement which in essence placed him under quasi-arrest . . . and an unlawful arrest followed." There is no merit to this contention, for in the instant case, while defendant remained in the company of Officers Wilcox and Sweeney he was not under "detention" in the context of detention by arrest. Defendant was not physically restrained in any manner, nor was he told that he *must* remain. The artifice employed by Officer Wilcox in no way can be construed as an arrest (or detention), and does not void the voluntary nature of defendant's acquiescence to accommodate the officers. The defendant would have us say that it is unusual to the point of incredulity that he remained "voluntarily," and hence it was submission to authority. We do not, as a matter of law, so find; nor did the trial court so conclude, and it was its initial duty to determine any conflicts in the evidence and inferences. The search itself was in compliance with a warrant to search, and the search was valid.

Defendant's second contention is that "[t]he subterfuge used by Lieutenant Wilcox to stop and detain appellant was unlawful *ab initio*." Our answer to defendant's first contention is also applicable to this contention.

---

[3]There were 284 packages in all which were confiscated.

[4]Penal Code section 841: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape. [¶] The person making the arrest must, on request of the person he is arresting, inform the latter of the offense for which he is being arrested."

In addition, the contention that the search here was a result of the ruse to gain entry to the warehouse cannot be sustained. ■ Deceptive conduct on the part of the police is illegal only when they obtain consent for conduct on their part which would otherwise be invalid. The case of *People* v. *Miller,* 248 Cal.App.2d 731, 739 [56 Cal.Rptr. 865] correctly states the rule: "It is one thing to use deception to cause the defendant to do something which he would not otherwise have done—but it is quite another matter to use trickery for the purpose of making a visual entry into his room, in other words, a search." ■ The ruse in the instant case did not provide the means for the search; no search was made prior to the officer's serving defendant with the search warrant, and the search warrant was adequate to supply the authority for the search. The case of *People* v. *Rand,* 23 Cal.App.3d 579 [100 Cal.Rptr. 473] is ample authority to negate this contention of defendant.

The judgment is affirmed. The attempted appeal from the order denying probation is dismissed.

Aiso, Acting P. J., and Cole, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 7, 1972.

---

*Assigned by the Chairman of the Judicial Council.