[Crim. No. 17502. Second Dist., Div. Four. Dec. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
FAUSTO MARMIETO DE LA SIERRA, Defendant and Appellant.

**COUNSEL**

Helen E. Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Geoffrey S. Cantrell, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON, Acting P. J.**—Defendant was charged by information with possession of heroin, in violation of section 11500 of the Health and Safety Code.

Defendant waived his right to trial by jury and, pursuant to stipulation, the matter was submitted to the court on the proceedings had at the preliminary hearing. Both sides offered additional evidence at the time of trial. The court found defendant guilty as charged, but made no finding on the prior felony conviction alleged in the information. Motions for new trial and probation were denied and defendant was sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment of conviction.

Officer Edward J. Sanchez of the Narcotics Division of the Los Angeles Police Department received information from a known and reliable informer that Yas Shimasu, who lived in an apartment at 951 East Edgeware Road, was dealing in heroin; that John Sakamoto and Louis Almada resided at 726 Tularosa Drive; that Louis Yamashiro resided at 722 Tularosa Drive; and that the three of them were also connected with narcotic transactions.

On September 2, 1968, Officer Sanchez "staked out" on the 951 Edgeware Road address; on two occasions he followed Yamashiro from this address to 726 Tularosa Drive, where Yamashiro held a meeting with Sakamoto and Almada. The officer again staked out on the two addresses from September 2, 1968 to September 11, 1968. During this nine-day surveillance, the officer observed numerous persons, known to him to be narcotic addicts, visit these two residences. They would enter and remain for a short time and then take their departure. The officer also observed defendant at these two residences and upon several occasions defendant would answer the door and admit the known narcotic addicts to the residences.

Officer Sanchez ran a "make" through the official records of the Los Angeles Police Department and learned that both Sakamoto and Almada were wanted for violation of parole.

Agents Allen, Hirsh and Officer Sanchez and three other officers went to the location 726 Tularosa Drive at approximately 1 p.m. on September 11, 1968. Officer Sanchez deployed the officers around the house, covering all exits and sent two officers to the rear door of the residence. He, himself, went to the front door, knocked and called out "Police officers." He then observed Mr. Sakamoto on the south side of the house running

toward Maltman Avenue, but Sakamoto was apprehended by two of the fellow officers and brought back to the residence and placed under arrest for suspicion of possession of narcotics. Officer Sanchez formed the opinion the other occupants in the house would also try to escape and destroy the evidence he suspected of being inside the house when he arrived.

The front door of the residence was already open and Officer Sanchez opened the screen door, which was not locked, and entered the house. The other officers also entered and a search of the premises was made. Defendant was observed in the rear portion of the house, attempting to leave by the rear door. He was wearing short pants but did not have on a shirt. Defendant and the rest of the occupants were placed under arrest for possession of narcotics. The search of the house revealed three multi-colored balloons wrapped in a wax paper bag inside a candle holder which was located in the upstairs portion of the house. In each balloon there was a quantity of whitish powder resembling heroin and later identified as heroin. A hypodermic needle, an eye dropper and a burnt spoon were found in a drawer in the kitchen. The search further revealed a can of Merck milk sugar, five empty rubber balloons and a bread wrapper containing a brownish substance on the top of a bar which was situated in the living room. The officer also discovered an alligator wallet containing a temporary driver's license dated August 1967, in defendant's name. The wallet was found on the top of the bar in the living room near the other items mentioned. This bar in the living room was the place where the officers seized a bread wrapper containing heroin.

Mr. Sakamoto, who was also arrested, told Officer Sanchez that all of the items and narcotics found in the house were his.

Defendant was advised of his constitutional rights and told Officer Sanchez he was temporarily living at the address where the narcotics were discovered. In a later conversation between defendant and Officer Sanchez at the police administration building defendant stated he had been living at 726 Tularosa Drive a couple of weeks because he was "down and out."

Defendant testified in his own behalf. He actually resided at 4005 Melrose, apartment 307; he rented that apartment on a month-to-month basis and shared it with his girl friend. He had an argument with his girl friend and he moved out and went to the address where he was arrested only to spend the night. He brought with him some clothing and a suitcase containing receipts and music and his bass fiddle, which was in the front room when the officers arrested him. The rest of the clothing was still at the apartment that he shared with his girl friend. He slept overnight on a couch in the front room at the address where he was arrested. He did

not see anything that looked like heroin at the house. He did not see or hear anyone break or enter the house. He was at the rear portion of the house at the refrigerator getting a cold drink when he heard Sakamoto say the police were there. He had a scratch on his arm caused by a fight with his girl friend. He had no other marks on his arm.

 Defendant contends the evidence taken from the house was illegally obtained and he argues that the raid and search by the officers did not comply with Penal Code section 844.

Officer Sanchez testified he approached the front door which was open; the screen door was closed but not locked. He called out "Police officers." He then observed Mr. Sakamoto running at the side of the house and leaving the premises. Officer Sanchez was of the opinion that the other suspects in the house would also attempt to escape and destroy the evidence if he did not enter immediately. Officer Sanchez had received information from a "reliable" informer that the occupants of the premises were dealing in narcotics; he had staked out on this house and had the occupants under surveillance for nine days prior to the time of the raid and arrest; he had seen numerous known narcotic addicts enter the house, admitted by defendant.

The officers had identified themselves to the occupants of the house and this identification alone was a compliance with Penal Code section 844, where the surrounding circumstances made the officers' purpose clear to the occupants and showed that a demand for admittance would have been futile. In fact codefendant (not appealing) ran from the house as he tried to escape. (See *People* v. *Rosales,* 68 Cal.2d 299, 302 [66 Cal.Rptr. 1, 437 P.2d 489].) Noncompliance in this particular case is excused because the officers acted on a reasonable and good faith belief that further compliance would frustrate an arrest or permit destruction of the evidence. The officers knew that these occupants were dealing in heroin and one codefendant (not appealing) tried to escape. This conduct was sufficient to give Officer Sanchez reasonable ground to believe that without immediate entry the purpose of their "stake out" and surveillance and the accomplishment of a good arrest would be frustrated. Officer Sanchez, knowing what he knew at that time, because of the information he had in this particular case was justified in making an immediate and forcible entry even if section 844 of the Penal Code had not been complied with. (*People* v. *Superior Court,* 276 Cal.App.2d 581, 587-588 [81 Cal.Rptr. 42]; also *People* v. *Carrillo,* 64 Cal.2d 387, 391-392 [50 Cal.Rptr. 185, 412 P.2d 377].)

 Defendant also argues that there was not probable cause for his arrest. The information Officer Sanchez received from a reliable and tested

informant; the things that Officer Sanchez had observed during the "stake out" and surveillance, such as the admitting of known narcotic addicts to the residence by defendant; defendant's attempt to escape by the back door; the manner in which defendant was dressed; the fact Officer Sanchez observed "numerous marks on the inner portion of his left arm"; defendant's stating to the officer that he lived at this address—the sum total of these circumstances would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that this defendant was guilty of a crime, to wit, possession of narcotics. (*People v. Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ Defendant contends the search of the premises was not incidental to the arrest. The officer testified that defendant was inside the house when arrested. Defendant was attempting to leave the house by the rear door but was arrested upon the premises as he attempted to escape. We conclude that the search of the premises was incidental to the arrest. In this case the actual arrest was made as defendant was attempting to escape by the rear door. We conclude the search and seizure of the items in plain view on the living room bar and next to defendant's wallet were contemporaneous with defendant's arrest.

■ Defendant contends that the evidence was insufficient as a matter of law to support the judgment. Defendant argues it was not proven that defendant had "dominion and control over the drug with knowledge both of its presence and its narcotic character." The evidence is undoubtedly sufficient to justify the arrest and support the conviction of possession of heroin. The evidence upon which the trial court found the defendant guilty was summarized by the court before rendering its judgment as follows: "Among other things, the evidence shows that Mr. De La Sierra . . . [was] not only seen at the residence on the day of the arrest, but on previous occasions. Mr. De La Sierra's wallet was found in the living room on the makeshift bar, the top of the bar, with narcotic paraphernalia and heroin in that general area on top of the bar. He had been living there, staying there, and sleeping there. The exact period of time is not certain.

"On the date of the arrest, he was in his undershirt out at the refrigerator. He was seen to have marks on the inner part of his left arm. . . ."

The court then specifically found the People had proven beyond a reasonable doubt that defendant had jointly possessed and controlled the heroin and had known it to be heroin.

■ Defendant's final contention is that the statements made at the preliminary hearing by the deputy district attorney were incorrect in his

arguments to the court in that the deputy district attorney stated defendant "was running" from the scene [of the crime] indicating guilty knowledge, and that this misstatement of the evidence "was not brought to the attention of the court and very likely influenced the court's decision." It is true that there was a misstatement by the deputy district attorney, but no harm was done. The court specifically, in its summary of the evidence and in rendering its decision, stated that Mr. Sakamoto ran, but the court did not state defendant ran. We find no error.

The judgment of conviction is affirmed.

Kingsley, J., and Dunn, J., concurred.