99 Cal.App.3d 874 (1979)
160 Cal. Rptr. 627
THE PEOPLE, Plaintiff and Respondent,
v.
RICHARD DEAN PORRAS, Defendant and Appellant.
Docket No. 19390.
Court of Appeals of California, First District, Division Three.
December 17, 1979.
*875 COUNSEL
Ronald W. Rose for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.
*876 OPINION
WHITE, P.J.
Defendant and appellant Richard Dean Porras appeals from the judgment of the Superior Court of Santa Clara County entered after he pled guilty to two violations of Health and Safety Code section 11378 (possession of LSD and methylenedioxy amphetamines for sale.)[1] Appellant contends on appeal that the evidence was unlawfully obtained.
In March of 1976, Officer Skalland and other members of the San Jose Police Department began surveillance of apartment 56, 3200 Payne Street, San Jose. Skalland had received information that several individuals who were believed to have been involved in an armed robbery lived in this apartment. Several times between March and June of 1976 a confidential informant, who on numerous occasions in the past provided reliable information, told Officer Skalland that narcotics were being used and sold from apartment 56 at 3200 Payne. Officer Skalland did nothing but continue the surveillance.
On June 20 and 21, 1976, the same confidential informant gave Officer Skalland firsthand information regarding narcotic activity in apartment 56. Shortly before 10 p.m. on June 22, 1976, the confidential informant told Skalland that the occupants of apartment 56 were in possession of approximately 1,000 doses of LSD, 2,000 doses of methylenedioxy amphetamines and a quantity of marijuana. The confidential informant stated that the occupants of the apartment were then manicuring marijuana on the kitchen table and that they kept the LSD, the amphetamines and the proceeds from drug sales in a silver gray metal tool box in the apartment.
Ten minutes after Skalland received the latest information from the informant, Skalland proceeded to apartment 56. By 10 p.m. Skalland *877 and officers under his direction were posted to observe and control the exit of persons from the apartment. After the officers were in position, by prearrangement, Officer Cossey telephoned apartment 56 and without identifying himself told the occupants that he had been arrested after purchasing narcotics in the apartment. Officer Cossey further stated that he had informed on them and that they should "get rid of the dope" because the police were coming with a search warrant and would be at the apartment in 20 minutes. The purpose of the police operation was to trick the occupants into leaving the apartment in possession of narcotics so they could be caught in possession outside and be arrested.
After the telephone call was placed Officer Skalland, who was positioned in the parking area under the apartment, heard sounds of footsteps, shouting and feet running down the steps of the apartment building. Two men ran down the stairs to the lawn in front of the apartment. After briefly looking around, they turned to a third person, appellant, who was standing on the stairs, and said "the coast is clear." Appellant then left the stairwell at a run carrying the tool box. The police ordered appellant to stop and when he declined, pursued him. While fleeing appellant tripped and dropped the tool box. Appellant left the area leaving the tool box behind. Subsequently, the tool box was opened by the police and quantities of LSD, methylenedioxy amphetamines, marijuana and money were found inside the tool box. Appellant made good his escape and was apprehended later.
(1) Appellant contends that the telephone call constitutes an unlawful ruse and therefore his abandonment of the tool box was not voluntary.
In People v. Rand (1972) 23 Cal. App.3d 579 [100 Cal. Rptr. 473], the court considered a similar ruse. The police received information that narcotic activity was taking place at defendant's residence. After the police were posted so that they could control any exit from defendant's residence, a police officer telephoned defendant, claimed to be a friend and warned defendant that "`the police are coming; get rid of the stuff.'" (At p. 582.) Defendant ran from the house and was accosted by a police officer. The police officer ordered defendant to stop for questioning about narcotics. At this point defendant threw away the container in which he was carrying a narcotic. The police recovered the container, discovered it contained a narcotic, and placed defendant under arrest. (Id., at pp. 581-582.)
*878 In Rand, defendant relied upon People v. Reeves (1964) 61 Cal.2d 268 [38 Cal. Rptr. 1, 391 P.2d 393], to support his position that the evidence was unlawfully obtained. In Reeves, the Supreme Court held that evidence was illegally obtained when police officers gained entry into a defendant's room by use of a ruse and subterfuge. The court in Rand distinguished the police ruse used in Rand from the police conduct in Reeves by quoting People v. Miller (1967) 248 Cal. App.2d 731, 739 [56 Cal. Rptr. 865], as follows: "`It is one thing to use deception to cause the defendant to do something which he would not otherwise have done  but it is quite another matter to use trickery for the purpose of making a visual entry into his room, in other words, a search.'" (People v. Rand, supra, 23 Cal. App.3d at p. 583.)
The court in Rand, in holding that the ruse was legally properly stated: "Many cases have held that the mere fact that a suspect is led to incriminate himself by use of some ruse or stratagem does not make the evidence thus obtained inadmissible. We cite, merely for illustration: Hoffa v. United States (1966) 385 U.S. 293 [17 L.Ed.2d 374, 87 S.Ct. 408]; Lewis v. United States (1966) 385 U.S. 206 [17 L.Ed.2d 312, 87 S.Ct. 424]; People v. Ramirez (1970) 4 Cal. App.3d 154 [84 Cal. Rptr. 104]; People v. Tambini (1969) 275 Cal. App.2d 757, 762 [80 Cal. Rptr. 179]; People v. Boulad (1965) 235 Cal. App.2d 118, 126 [45 Cal. Rptr. 104]. As the Attorney General points out, were we to accept the defense argument made in the cases at bench, all under-cover activity would likewise be proscribed. Where the ruse does no more than to cause a defendant, activated by his own decision, to do an incriminating act  whether that act be a sale to an undercover agent or a jettisoning of incriminating material  no illegality exists." (At p. 583; see also People v. Allen (1978) 86 Cal. App.3d 948, 953-954 [150 Cal. Rptr. 568]; People v. Dees (1972) 27 Cal. App.3d 922, 926-927 [104 Cal. Rptr. 125].)
Given the fact that we are faced with an almost identical fact situation as the one found in Rand, we feel compelled to follow Rand.[2] However, we do so with certain reservations and invite the California *879 Supreme Court to consider the validity of such a ruse in light of the right of privacy and People v. Ramey (1976) 16 Cal.3d 263 [127 Cal. Rptr. 629, 545 P.2d 1333]. In 1972, the voters of California adopted a constitutional amendment to article I, section 1 of the California Constitution which explicitly includes the right of privacy as an inalienable right. (See White v. Davis (1975) 13 Cal.3d 757, 776 [120 Cal. Rptr. 94, 533 P.2d 222].) Prior to the adoption of this amendment, California courts had found a state and federal constitutional right to privacy even though such a right was not enumerated in the California Constitution or the United States Constitution. (See In re Lifschutz (1970) 2 Cal.3d 415, 431-432 [85 Cal. Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; City of Carmel-by-the-Sea v. Young (1970) 2 Cal.3d 259, 266-268 [85 Cal. Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]; People v. Edwards (1969) 71 Cal.2d 1096, 1103-1105 [80 Cal. Rptr. 633, 458 P.2d 713]; People v. Belous (1969) 71 Cal.2d 954, 963-964 [80 Cal. Rptr. 354, 458 P.2d 194], cert. den. 397 U.S. 915 [25 L.Ed.2d 96, 90 S.Ct. 920]; Parrish v. Civil Service Commission (1967) 66 Cal.2d 260, 265 [57 Cal. Rptr. 623, 425 P.2d 223].) The adoption of the amendment was intended to strengthen the right of privacy. (Porten v. University of San Francisco (1976) 64 Cal. App.3d 825, 829 [134 Cal. Rptr. 839].) "`The right to privacy is the right to be left alone.'" (White v. Davis, supra, 13 Cal.3d at p. 774.) It might be argued that appellant's right to be left alone in his home was violated when the police telephoned him.
In People v. Ramey, supra, 16 Cal.3d 263, the California Supreme Court held that in the absence of exigent circumstances the police must obtain an arrest warrant before arresting a defendant in his home. "An intrusion by the state into the privacy of the home for any purpose is one of the most awesome incursions of police power into the life of the individual. Unrestricted authority in this area is anathema to the system of checks envisaged by the Constitution. It is essential that the dispassionate judgment of a magistrate, an official dissociated from the `competitive enterprise of ferreting out crime' [citation], be interposed between the state and the citizen at this critical juncture. The frightening experience of certain foreign nations with the unexpected invasion of private homes by uniformed authority to seize individuals therein, *880 often in the dead of night, is too fresh in memory to permit this portentous power to be left to the uninhibited discretion of the police alone." (People v. Ramey, supra, at p. 275.) Officer Skalland testified that his purpose in going to 3200 Payne after 10 p.m. was to arrest the occupants outside the apartment in possession of narcotics. Since the police did not have an arrest warrant (or a search warrant), the ruse could be viewed as a device to avoid the holding in Ramey (and the requirement for a search warrant). Clearly, the instant case does not involve exigent circumstances. Officer Skalland had been receiving information from the confidential informant in regard to narcotic activity since March of 1976 and the ruse occurred on June 22, 1976. (See James v. Superior Court (1978) 87 Cal. App.3d 985 [151 Cal. Rptr. 270]; People v. Superior Court (Godwin) (1977) 68 Cal. App.3d 780 [137 Cal. Rptr. 586].)
The judgment is affirmed.
Poche, J.,[*] concurred.
Scott, J., concurred in the judgment.
A petition for a rehearing was denied January 16, 1980, and appellant's petition for a hearing by the Supreme Court was denied February 14, 1980.
NOTES
[1] Section 1538.5, subdivision (m) of the Penal Code provides that a defendant may seek review of the validity of a search or seizure on appeal notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty. California Rules of Court, rule 31 (d) provides in part: "If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere is based solely upon grounds (1) occurring after entry of such plea, which do not challenge the validity of the plea or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code, the provisions of section 1237.5 of the Penal Code requiring a statement by the defendant and a certificate of probable cause by the trial court are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds." Appellant's notice of appeal specifies that the appeal is to seek review of the denial of his motion to suppress evidence.
[2] Appellant contends that the use of the Rand procedure should be limited to situations in which probable cause does not exist or in which it is otherwise impossible or impractical to obtain a search warrant. Appellant asserts that the Rand court limited its opinion to situations in which no probable cause exists. Appellant is incorrect. In Rand, the court expressly held that since the conduct of the police in telephoning the defendants which panicked them into fleeing with and abandoning their narcotics, was lawful, it did not have to consider whether or not there was probable cause to arrest the defendant without the evidence secured by the ruse. (People v. Rand, supra, 23 Cal. App.3d at p. 583.) No one questions the fact that probable cause existed to arrest appellant and one other occupant of the apartment. Skalland testified that he had been receiving information from the informant for over a year and on many occasions the information received was reliable.
[*] Assigned by the Chairperson of the Judicial Council.