[No. B001741. Second Dist., Div. Four. Mar. 18, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD MARTINO et al., Defendants and Appellants.

778

COUNSEL

R. Michael Wetherbee, Donald R. Wager and Derek L. Tabone for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Christine C. Franklin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARGUELLES, J.**—The principal question which we address in this search and seizure case is whether *People* v. *Chapman* (1984) 36 Cal.3d 98 [201 Cal.Rptr. 628, 679 P.2d 62], which prohibits a warrantless seizure of the unlisted name, address, or telephone number of a telephone company subscriber, should be applied retroactively to a search that preceded both the *Chapman* decision and *People* v. *Blair* (1979) 25 Cal.3d 640 [159 Cal.Rptr. 818, 602 P.2d 738], upon which *Chapman* relied. We have concluded that *Chapman* should not apply. Having further concluded that the remaining contentions are without merit, we have determined that the judgments should be affirmed.

Richard Martino (Martino) and Frank Mingarella (Mingarella) appeal from the judgments entered following Martino's plea of nolo contendere to a charge of possession of cocaine for sale (Health & Saf. Code, § 11351) and Mingarella's plea of guilty to simple possession of cocaine (Health & Saf. Code, § 11350). Both appellants challenge the trial court's denial of

their motions to suppress evidence (Pen. Code, § 1538.5) and to disclose the identity of an informant.

## FACTS

On the afternoon of October 3, 1979, Los Angeles Police Officer Donald L. Girt, a narcotics detective, gave his superior officer, Lieutenant Clark A. Wardle, information obtained from a confidential reliable informant to the effect that a male, approximately 40 years old, who claimed to be a psychologist, was trafficking in large quantities of cocaine from Miami to Los Angeles, via Los Angeles International Airport, that a shipment of cocaine had arrived within the last 10 days, and that the suspect could be reached at a particular telephone number.

Detective Girt obtained the address of a Hollywood residence corresponding to the telephone number from the telephone company. Then, pursuant to a plan, he stationed himself outside the residence. Lieutenant Wardle then telephoned the residence and told the male who answered: "The cops are getting a search warrant. If you have any dope, you had better get it out of there. Don't tell them you got a call." Within moments, Lieutenant Wardle advised Detective Girt by police radio that he had made the call. At about the same time, Detective Girt heard screaming and running inside the residence followed by the flinging open of the front door. Detective Girt watched Mingarella run from the front door of the residence to a red Camaro carrying a white plastic shoe bag, which he threw into the rear seat.

At that point, Detective Girt approached Mingarella and identified himself as a police officer conducting a narcotics investigation. He could see the plastic bag on the rear seat of the car and observed that it had fallen open to reveal plastic baggies containing more than a pound of a white crystalline substance resembling cocaine. He then arrested Mingarella on a charge of possession of cocaine for sale. As Detective Girt and his partner were examining the bag and its contents, Mingarella said "Cocaine." He made additional spontaneous remarks to the police to the effect that Martino had given him the bag and had told him to take it to the clinic where Martino worked because the police were coming. Mingarella also told the officers that other people were inside the residence.

With his gun drawn but concealed behind his leg, Detective Girt knocked on the door of the residence. When Martino opened the door, Detective Girt displayed his badge and identified himself as a police officer conducting a narcotics investigation. Martino stepped back, opened the door and let in Detective Girt. He asked Martino if others were in the house and whether

they were armed. Martino told him there were others, but he did not know if they were armed.

Detective Girt made a cursory search of the residence for people and weapons. After locating and securing two other persons inside the residence, Detective Girt asked Martino for permission to conduct a further search. Martino responded, "Go ahead. There is no more narcotics here. You can go ahead and search." Detective Girt searched the residence and discovered narcotics paraphernalia, scales, a gun, airline tickets issued to Martino for a flight from Miami to Los Angeles, papers showing Martino's residence at that address, a kit of chemicals and implements used to "free base" cocaine, two small vials containing small amounts of cocaine, and a telephone bearing the same number that had been given to him by the informant.

Detective Girt seized these items as evidence and arrested Martino for possession of cocaine for sale.

Martino and Mingarella were charged by information with possession of cocaine for purposes of sale (Health & Saf. Code, § 11351) and maintaining a place for the purpose of unlawfully selling, giving away and using cocaine (Health & Saf. Code, § 11366).

Martino and Mingarella brought motions to suppress evidence and to discover the identity and whereabouts of the informant. The court held an *in camera* hearing, out of the presence of the defense, on the motion for identification of the informant in which Detective Girt and another police officer testified. The informant was not available to testify at the *in camera* hearing.

The court denied the motions to discover the informant and to suppress.

Mingarella then pleaded guilty to simple possession of cocaine, and Martino pleaded nolo contendere to possession of cocaine for sale. The remaining charges against both appellants were dismissed in the interest of justice. This appeal followed.

### CONTENTS

 Both Martino and Mingarella contend: "The trial court erred in denying Appellant Martino's Motions to Dismiss and to Suppress Evidence in that the Officers obtained his address from the telephone company in violation of his constitutional rights."[1]

---

[1]Mingarella can assert Martino's constitutional rights. (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150 [98 Cal.Rptr. 649, 491 P.2d 1].) See footnote 2, *infra*.

Mingarella also contends: (1) "Once the court went into. the in camera hearing, the People had to produce the informant for examination by the court or suffer dismissal"; (2) "The testimony at the in camera hearing could not satisfy the statutory requirements"; (3) "The evidence was the product of an illegal seizure and should have been suppressed"; and (4) "The search was the product of a ruse by police which exceeded permissible bounds."

Martino further contends: (1) "The trial court erred in denying Appellant Martino's Motion to Dismiss and to Suppress Evidence in that he did not consent to the search of his home"; and (2) "There is insufficient evidence to substantiate a finding of guilt."

DISCUSSION[2]

*Information Obtained From the Telephone Company*

 In *People* v. *Chapman, supra,* 36 Cal.3d 98, the court held that the constitutional right of privacy and right to be free from unreasonable searches and seizures prohibit police officers from obtaining the name, address and telephone number of unlisted subscribers from the telephone company without a warrant.

 When the police have conducted a warrantless search, as they did here, the prosecution has the burden of showing probable cause. (*People* v. *Sedillo* (1982) 135 Cal.App.3d 616, 623 [185 Cal.Rptr. 475].) There was no evidence here, however, as to whether the telephone number given to the police—a number which Detective Girt later observed on Martino's telephone—was a listed or an unlisted number. Accordingly, we must assume that the number was unlisted. Thus, the search would be unreasonable pursuant to *Chapman.*

 ██ However, we must decide as a matter of first impression whether the *Chapman* rule is to be applied retroactively.[3]

---

[2]As the seizures in this case occurred in 1979, "this court need not determine the effect, if any, of the 'truth in evidence' provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d))." (*People* v. *Chapman, supra,* 36 Cal.3d 98, 105, fn. 3.)

[3]In *Chapman,* the Supreme Court noted that the federal Constitution does not protect unlisted telephone subscriber information from a warrantless search. (*People* v. *Chapman, supra,* 36 Cal.3d 98, 106, fn. 4.) Recently, however, the Supreme Court decided, pursuant to the provisions of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), that a court may exclude evidence seized in violation of state constitutional standards "only if exclusion is also mandated by the federal exclusionary rule applicable to evidence seized in violation of the Fourth Amendment." (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].) The court emphasized that it was the remedy of exclusion rather than the constitutional standard itself that was affected by Proposition 8. (*Id.,* at pp. 886-887.) Thus, under present law, while seizure of unlisted telephone subscriber information without a warrant remains unlawful pursuant to *Chapman,* such information may not be excluded from evidence because federal law does not require its exclusion.

■ The rules for determining the retroactivity of a California Supreme Court decision were most recently stated in *People* v. *Guerra* (1984) 37 Cal.3d 385, 399 [208 Cal.Rptr. 162, 690 P.2d 635], as follows: "'As a rule, judicial decisions apply "retroactively." [Citation.] Indeed, a legal system based on precedent has a built-in presumption of retroactivity.' [Citation.]" (*Ibid.*) "To determine whether a decision should be given retroactive effect, the California courts first undertake a threshold inquiry: does the decision establish a new rule of law? If it does, the new rule may or may not be retroactive . . .; but if it does not, 'no question of retroactivity arises' [i.e., the presumption of retroactivity applies] because there is no material change in the law. (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 36 [196 Cal.Rptr. 704, 672 P.2d 110]; *People* v. *Garcia* (1984) 36 Cal.3d 539, 547-548 [205 Cal.Rptr. 265, 684 P.2d 826]; *United States* v. *Johnson* (1982) 457 U.S. 537, 549 [73 L.Ed.2d 202, 213-214, 102 S.Ct. 2579].) In that event the decision simply becomes part of the body of case law of this state, and under ordinary principles of stare decisis applies in all cases not yet final." (*Ibid.*)

The court went on to identify the most common examples of decisions that do not establish a new rule of law and, therefore, are applied retroactively: "those which explain or refine the holding of a prior case, those which apply an existing precedent to a different fact situation, even if the result may be said to 'extend' the precedent, or those which draw a conclusion that was clearly implied in or anticipated by previous opinions. [Citations]." (*People* v. *Guerra, supra,* 37 Cal.3d, at p. 399.)

"If the decision establishes a new rule of law, a second question arises: was there a prior rule to the contrary? If there was, the new rule—again—may or may not be retroactive, as we discuss below; if there was not, the new rule applies in all cases not yet final. This is so for the obvious reason that there cannot have been any *justifiable* reliance on an old rule when no old rule existed. And the emphasized word is crucial: 'Unjustified "reliance" is no bar to retroactivity.' [Citations.] . . ." (*Ibid.*)

■ The present case is a difficult one to resolve in light of the applicable standard. At the outset, we find that the first and second questions of the retroactivity standard are so ⌐nextricably intertwined here that they must be considered together.

We note that at the time the police contacted the telephone company, the closest appellate case on point stated that a search warrant was not necessary in such circumstances since "There is no reasonable expectation of privacy in name, address or telephone number as found in the records of the tele-

phone company." (*People* v. *Elder* (1976) 63 Cal.App.3d 731, 738 [134 Cal.Rptr. 212].)

It appears that no petition for hearing in the Supreme Court was filed in *People* v. *Elder, supra,* 63 Cal.App.3d 731. No other decision of the state appellate court addressed the issue at the time Detective Girt obtained Martino's address from the telephone company.[4]

The Supreme Court in *Chapman* observed that because the case before it addressed the reasonableness of a privacy interest in information disclosed by third parties, it was governed by the principles set forth in *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166, 529 P.2d 590], and *People* v. *Blair, supra,* 25 Cal.3d 640. (*People* v. *Chapman, supra,* 36 Cal.3d at p. 106.) The court identified the relevance of those cases to the issue pending in *Chapman* as follows: "Those cases recognized an individual's right to privacy as to information which is in the possession of third parties, specifically bank records [*Burrows*] and telephone call records [*Blair*]. The court held that such information could not be disclosed to law enforcement authorities without legal process. [Citations.]" (*Ibid.*)

However, the *Blair* decision dealing with one's privacy interest in records of telephone calls was filed on November 9, 1979—a month after Martino and Mingarella were arrested.

Moreover, the *Burrows* holding, that a person had a reasonable expectation of privacy in his bank records, was already two years old when the Court of Appeal in *Elder* held that there was no such expectation in one's name, address or telephone number found in the records of the telephone company.

On such authority, we do not think the Supreme Court intended police officers, who are bound only to a reasonableness standard in their determination of probable cause, to exercise such perspicacious foresight of legal trends as would have led them to believe that they had to obtain a warrant

---

[4]*People* v. *McKunes* (1975) 51 Cal.App.3d 487, 490-491 [124 Cal.Rptr. 126], decided one year before *Elder,* held that a person's right to privacy was violated when telephone company records of his outgoing calls were obtained without a warrant. Although the views expressed in *McKunes* were ultimately cited with approval in *People* v. *Blair, supra,* 25 Cal.3d at pages 653-654, and *People* v. *Chapman, supra,* 36 Cal.3d at pages 107-109, *McKunes* was distinguished in *Elder,* where the court "found that '. . . unlike both *Burrows* [v. *Superior Court* (1974) 13 Cal.3d 238 (118 Cal.Rptr. 166, 529 P.2d 590)] and *McKunes,* there was no seizure of the "current biography" of the affairs of defendant . . . . [¶] Name and address relate to identification rather than disclosure of private, personal affairs.'" (*People* v. *Chapman, supra,* 36 Cal.3d at p. 109, quoting *People* v. *Elder, supra,* 63 Cal.App.3d at p. 737.)

before seeking the address of a subscriber from the telephone company. Although we recognize that in another setting, it could reasonably be argued that *Chapman* resembles some of the common examples of decisions that do not establish a new rule of law, we nevertheless hold in the context presented here that *Chapman* did present such a new rule of law in the face of a prior rule to the contrary on which police officers justifiably relied.

Such a conclusion finds additional support in another aspect of the retro-activity analysis.

■ "Once resolved that a decision establishes a new standard, the California courts define the retroactive effect of that decision under the tripartite test based upon *Stovall* v. *Denno* [1967] 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]. *People* v. *Kaanehe* (1977) 19 Cal.3d 1 [136 Cal.Rptr. 409, 559 P.2d 1028], explains the California practice: 'Whether a judicial decision establishing new . . . standards is to be given retroactive effect is customarily determined by weighing the following factors: "(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards." . . .' [Citations.] [¶] In search and seizure cases, the tripartite test leads generally to the conclusion that a decision should not be given retroactive effect. As explained in *Kaanehe,* in such a case '[e]xclusion is not necessary to ensure the reliability of the fact-finding process at trial. No compulsion is present and the evidence seized is entirely trustworthy. As the purpose of the exclusionary rule in those circumstances is to deter illegal conduct by law enforcement officials, exclusion of evidence seized prior to the pronouncement of a decision does not further compliance with that decision.' [Citations.]" (*Donaldson* v. *Superior Court, supra,* 35 Cal.3d 24, 38-39, fn. omitted.)

■ Under this analysis we find that no compulsion was present, and the evidence seized, the address of the telephone subscriber, was entirely trustworthy.

Indeed, under the then-existing state of the law represented by *People* v. *Elder, supra,* 63 Cal.App.3d 731, the conduct of the police in obtaining *only* the address corresponding to the telephone number they were given may well have reflected due regard for the privacy interests of the telephone subscriber consistent with their duty to investigate alleged narcotics violations within the bounds of the law.

In this regard, we are mindful of recent California decisions holding that the federal good faith exception to the exclusionary rule applies to Califor-

nia cases and is retroactive. (See, e.g., *People* v. *Helmquist* (1984) 161 Cal.App.3d 609 [207 Cal.Rptr. 718].)

We, therefore, conclude that the police did not violate Martino's or Mingarella's constitutional rights in obtaining Martino's address from the telephone company without a warrant, and that the motions to suppress were properly denied.

### Identity and Testimony of Informant

A motion to discover the identity of an informant is not a section 1538.5 motion, but, rather, is a motion to discover evidence in the form of the informant's information, which might lead to defendant's exoneration. By pleading guilty (or nolo contendere), defendant admits the truth of the allegations against him, and the informant's evidence becomes useless. Therefore, denial of a motion to discover the identity of the informant cannot be raised on appeal after a plea of guilty or nolo contendere, absent a showing of special conditions in the plea bargain. (*People* v. *Castro* (1974) 42 Cal.App.3d 960, 963 [117 Cal.Rptr. 295]; *People* v. *Archuleta* (1971) 16 Cal.App.3d 295, 299-301 [93 Cal.Rptr. 881].)

Accordingly, neither Martino nor Mingarella can raise denial of the motion to discover the informant on this appeal.

### Police Ruse

Mingarella's contention that the police acted improperly by staking out Martino's residence and then telephoning is meritless.

Such a ruse has been held to be lawful in the course of narcotics investigations. (See *People* v. *Porras* (1979) 99 Cal.App.3d 874 [160 Cal.Rptr. 627]; *People* v. *Rand* (1972) 23 Cal.App.3d 579 [100 Cal.Rptr. 473].)

The police here did not improperly hide behind the color of judicial authority. The anonymous caller represented himself to be someone other than a police officer, by saying that the "cops" (not "we") are getting a search warrant, and not to "tell *them* [the cops] you got the call." Additionally, he stated that the police "are getting," not that they "had," a search warrant.

Moreover, in *People* v. *Porras, supra,* 99 Cal.App.3d 874, just as in this case, a police officer telephoned defendant's residence and informed the occupants that "they should 'get rid of the dope' because the police were

coming with a search warrant . . .," and the search and seizure were upheld. (At p. 877.)

### Probable Cause to Arrest Mingarella

■ Mingarella's contention that the police lacked probable cause to arrest him also lacks merit.

A police officer may arrest a person without a warrant "[w]henever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (Pen. Code, § 836, subd. 1.)

■ Probable cause means a state of facts " 'as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion' . . ." that a person is guilty of a crime. (*People* v. *Campa* (1984) 36 Cal.3d 870, 879 [206 Cal.Rptr. 114, 686 P.2d 634].)

■ Plain view observation of a defendant attempting to dispose of or conceal contraband constitutes adequate probable cause to arrest. (*People* v. *Tellez* (1982) 128 Cal.App.3d 876, 878-879 [180 Cal.Rptr. 579].)

One of the arresting officers testified that after the ruse call was made, he heard screaming and running inside the residence, and Mingarella came out of the residence, carrying a white bag, and placed the bag in the rear seat of a car. At that point, there was plain view observation of a probable attempt to dispose of contraband, justifying the officers in approaching to investigate, at least. (See *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) Then the bag fell open, revealing its contents to the plan view of the officers, who saw inside the bag a number of "plastic baggies containing a white crystalline substance resembling cocaine." These observations, in the light of the arresting officer's education, training and experience, led him to believe that there had been a possession of narcotics in his presence.

From this, we find that "the sum total of these circumstances would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that this defendant was guilty of a crime, to wit, possession of narcotics. [Citation.]" (*People* v. *De La Sierra* (1970) 13 Cal.App.3d 528, 534 [91 Cal.Rptr. 674].)

### Residential Search

We need not address Martino's contention that his consent was induced by the unlawful search and seizure of telephone company records to obtain his address, as we have already determined that the search was not unlawful.

 The court properly concluded that the search of Martino's residence was pursuant to valid consent. When Mingarella was arrested, he told Detective Girt that there were other people in the house. Detective Girt knocked on the door, displayed his badge, and told Martino that he was a police officer conducting a narcotics investigation. He had a weapon drawn, but concealed behind his leg, and was wearing a jacket marked "LAPD." Martino stepped back and opened the door. Because Martino said there were other people in the house, and he did not know if they were armed, Detective Girt searched the house for his safety, and found other persons. He then returned and asked Martino if he could search further, and Martino gave his consent. On this search, the officer found evidence.

Consent to search is a factual question, and the superior court's determination will be upheld if supported by substantial evidence. (*People* v. *James* (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135].)

Consent to enter a residence may be given nonverbally. In *People* v. *Harrington* (1970) 2 Cal.3d 991 [88 Cal.Rptr. 161, 471 P.2d 961], the court held that defendant's gesture in opening the door and holding out his arm constituted such nonverbal consent. In this case, Martino's nonverbal gesture of opening the door wider and stepping back for Detective Girt to enter constituted substantial evidence to support the trial court's conclusion that Martino consented to the initial entry.

Unlike those cases where consent was vitiated by the officer's display of weapons, in this case, Detective Girt's gun was concealed when he knocked. (Cf. *People* v. *Challoner* (1982) 136 Cal.App.3d 779, 782 [186 Cal.Rptr. 458].) Even the fact that defendant has been arrested and handcuffed will not preclude valid consent as a matter of law. (*People* v. *James, supra,* 19 Cal.3d 99, 107-110.)

 Martino expressly consented to the second search. In *People* v. *Parrison* (1982) 137 Cal.App.3d 529, 536 [187 Cal.Rptr. 123], the court held that a previously conducted search of a house did not vitiate consent to a second search. Therefore, Martino could validly give his consent after the initial search for persons and weapons had been conducted.

### Sufficiency of the Evidence

As we have determined that the search and seizure in this case was not unlawful, we need not discuss the contention that the evidence was not sufficient to substantiate a finding of guilt, absent the illegally seized evidence.

DISPOSITION

The judgments are affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.

A petition for a rehearing was denied April 11, 1985, and the petition of appellant Martino for review by the Supreme Court was denied June 6, 1985.