Filed 11/20/17 (reposted to provide corrected version)

CERTIFIED FOR PUBLICATION

IN THE APPELLATE DIVISION OF THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF YOLO

| | |
|---|---|
| THE PEOPLE, | ) Case No.: CR M 16-6910 |
| | ) |
| | ) |
| Plaintiff and Respondent, | ) |
| | ) **DECISION** |
| vs. | ) |
| | ) |
| ADAM ARTER, | ) |
| | ) |
| | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

APPEAL from a judgment of the Superior Court of Yolo, Timothy L. Fall,
Affirmed.

Adam Davytan, Yolo County Public Defender, for defendant and appellant.

Alex Kian, Yolo Couunty Distrct Attorney for plaintiff and respondent.

Defendant Adam Arter appeals from the trial court's order denying his motion to suppress. Finding no error, we **AFFIRM**.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 18, 2016, the People filed a complaint against defendant Adam Arter, alleging two counts: Count 1, a misdemeanor violation of Harbors and Navigations Code section 655(b), operating a vessel while under the influence of alcohol or drugs, Count 2, a misdemeanor violation of section 655(c), operating a vessel at .08 BAC or above, and Count 3, a misdemeanor violation of section 655.2, for speeding.

On January 20, 2017, defendant filed a motion to suppress evidence, which the trial court denied on March 16, 2017.

On March 29, 2017, defendant filed a timely notice of appeal from the denial of the motion to suppress.

According to the facts adduced at the suppression hearing:

On September 24, 2016, Officer Sergeant ("officer") Sam Machado detained the occupants of a boat on the Sacramento River in Yolo County, including defendant Adam Arter, for speeding. Mr. Arter initially denied having consumed any alcohol. The officer asked if he could see defendant's eyes and saw smooth pursuit and max deviation (nystagmus) in defendant's left eye. Defendant continued to deny consuming alcohol.

During this detention, the officer asked if Mr. Arter would submit to a breath test, to which Mr. Arter agreed and provided a sample of .079% blood alcohol content (BAC) at around 4:00 p.m. After obtaining this initial breath sample, the officer requested that Mr. Arter perform field sobriety tests to ensure that he was safe to operate the vessel. Defendant performed the finger to nose test, hand pat, and finger count test in a manner that suggested that he was impaired. The officer detected an odor of alcohol coming from defendant's person, and then defendant admitted consuming two pints of beer 45 minutes to one hour before that. The officer asked defendant if defendant thought he could drive a vehicle under his condition, and he replied that he could not.

As part of the field sobriety tests, the officer requested that Mr. Arter submit to another preliminary breath test, explaining that it would be another field sobriety test. The officer explained that if Mr. Arter were arrested, the preliminary breath test would not be in place of an evidentiary breath test. Mr. Arter submitted to the preliminary breath test with a reading of .094% BAC.

Following the administration of the preliminary alcohol screen test, the officer placed Mr. Arter under arrest and obtained two evidentiary breath samples from him. In requesting that Mr. Arter provide evidentiary samples, the officer read him an advisement:

> You have been arrested for a BUI. I'm requesting that you submit to a chemical test of your breath or blood. You have the right to refuse, but that refusal may be used against you in a court as an admission of guilt. If you refuse, I will submit a blood warrant affidavit to a judge. If approved, I will then forcefully take a sample of your blood for evidentiary analysis.

These samples came back at .08% and .09%.

At the conclusion of the motion to suppress hearing, defendant's counsel argued that there was no legal justification for three warrantless searches: the preliminary breath sample of .094% obtained before arrest as part of the field sobriety tests and the two evidentiary breath samples obtained after arrest. When the preliminary breath test came back at .079%, the court stated that "everything after that was an appropriate investigation in to [sic] whether he was at .08 or above."

Regarding the two evidentiary breath tests, the court reasoned, "there is no question that he was going to give the blood test, whether he was coerced in to [sic] it by a bad advisement or he was--a chemical test, I should say, whether he was coerced in to [sic] it by a bad advisement or coerced in to [sic] it by way of a search warrant for blood, it was going to happen, at that point, because there was probable cause to arrest by then." When asked by defendant's counsel if the court's ruling was that the doctrine of inevitable discovery applied, the court responded, "he's going to submit anyway, whether it was by a bad advisement or by warrant. The chemical test was going to be conducted." The court declined to opine whether the legal doctrine of inevitable discovery applied, merely stating, "I don't know what else that means except they

were going to get a chemical sample out of him. They could coerce by a bad advisement or they can coerce him by a search warrant that says, here the judge says you have to do it. They were going to get it."

Defendant filed an opening brief.

The People filed a respondent's brief.

Defendant filed a reply brief.

## DISCUSSION

**A.      Standard of review applicable to motions to suppress.**

"[The] standard of review on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of reasonableness. [Citation.]" (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1073-74.)

In *People v. Leyba* (1981) 29 Cal.3d 591, 596-98, the California Supreme Court elaborated on the standard:

> In *People v. Lawler* (1973) 9 Cal.3d 156, 160, we discussed the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which an appellate court reviews each of those steps. In the first step the trial court must "find the facts" relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts "the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence."
>
> No less important, however, is the second step of the process. As we observed in *Lawler*, "The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution." (*Ibid*.) Because "that issue is a question of law," the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon.

> Rather, we explained, in such review it is "the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*Ibid*.) On that issue, in short, the appellate court exercises its independent judgment.

An appellate court implies "all findings necessary to support the judgment, and [its] review is limited to whether there is substantial evidence in the record to support these implied findings." (*People v. Francis* (2002) 98 Cal.App.4th 873, 878.)  The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. (*Sammis v. Stafford* (1996) 48 Cal.App.4th 1935, 1942.) The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.)

**B.      The trial court properly denied the motion to suppress.**

Defendant argues that: (1) the second breath sample was taken from defendant in violation of the Fourth Amendment because there was no valid consent; and (2) the two breath samples taken after defendant was arrested were taken from defendant in violation of the Fourth Amendment because the incorrect advisement amounted to coercion that vitiated valid consent and the inevitable discovery doctrine does not apply.

*1.  The second breath sample of .094%.*

Defendant argues that the officer did not procure valid consent from Mr. Arter for the second breath sample.  (He does not challenge the procurement of the first breath sample.)

The prosecution bears the burden of showing that the defendant's consent to search is voluntary and unaffected by coercion. The voluntariness of the consent is a factual question to be decided in light of all the circumstances. (*Estes v. Rowland* (1993) 14 Cal.App.4th 508, 527 [voluntariness of consent depends on totality of circumstances]; *People v. Miller* (1999) 69 Cal.App.4th 190, 202, 203; [testimony of investigating officer adequately supported trial court's implied finding that defendant's consent was voluntary].)

Under *People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1558, the following factors are relevant to whether consent is voluntary:

> (a) Whether the person consenting was in custody.
>
> (b) Whether the arresting officers had their guns drawn.
>
> (c) Whether *Miranda* warnings had been given.
>
> (d) Whether the person consenting was told that he or she had a right not to consent.
>
> (e) Whether the person consenting was told that a search warrant could be obtained.

Even if a defendant is under arrest at the time of the search does not preclude a finding that his or her consent to the search was voluntary. (*United States v. Watson* (1976) 423 U.S. 411 [consent was freely given following defendant's warrantless arrest; custody alone is not enough in itself to demonstrate coercion]; *People v. Fischer* (1957) 49 Cal.2d 442, 448 [consent given while under arrest is not involuntary as matter of law]; *People v. Monterroso* (2004) 34 Cal.4th 743, 758 [when consent to search was sought and given, defendant (1) had been arrested, (2) was in handcuffs, (3) had not been given *Miranda* warnings, and (4) had not been informed of right to withhold consent; these are factors to be considered, but did not preclude finding that consent was voluntary].)

Consent need not be express; it may be implied from acts. (*Tidwell v. Superior Court* (1971) 17 Cal.App.3d 780, 784 [gestures; defendant turned slightly, as though speaking to someone, turned back toward door, opened it wider, and stepped back]; *People v. Martino* (1985) 166 Cal.App.3d 777, 791 [implied consent; defendant, after hearing knock at door and announcement that police officer was conducting narcotics investigation, stepped back and opened door].)

Initially, the officer commenced field sobriety tests by asking defendant if he could see his eyes, a request to which defendant assented. Thereafter, defendant consented to the first breath test, a sample defendant does not here challenge. When defendant submitted to the second breath test, he was not in custody, and there is no evidence that defendant was subject to

a show of force by the officer. He did not withdraw the consent he previously gave. There is no evidence that the officer badgered defendant and there is no evidence that he made any promises or threats to obtain defendant's consent. Defendant never tried to stop or limit the search. (*Miller,* supra, 203.) These circumstances favor a finding of voluntary consent.

Defendant argues that the officer's telling defendant that the breath test was being administered as part of the field sobriety tests vitiates any consent. Defendant cites no legal authority holding that the administration of field sobriety tests along with the breath tests alone undermines a finding of consent. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [failure to cite adequate authority waives appellate review of issue].) As set forth in *Ramirez*, it is a multi-factored determination, none of which defendant analyzes. The evidence supports an implied finding that defendant consented to the breath test.

2. *The two post-arrest breath samples.*

Defendant argues that the inaccurate advisement vitiated defendant's consent to the two post-arrest breath samples, and that inevitable discovery does not apply to the samples.

An exception to the warrant requirement exists if an authorized party voluntarily consents to a search without a warrant. (*People v. James* (1977) 19 Cal.3d 99, 106.) Under settled constitutional principles, a party may waive the warrant requirement and consent to a search if the waiver is voluntary, authorized properly and solicited without threat, coercion or fraud. (*Bumper v. No. Carolina* (1968) 391 U.S. 543, 550.)

Because blood-alcohol breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving. As in all cases involving reasonable searches incident to arrest, a warrant is not required. (*Birchfield v. North Dakota* ____U.S.____, 136 S. Ct. 2160.)

*Birchfield* involved three motorists who were arrested for drunk driving. One motorist agreed to a roadside breath test but, after his arrest, refused a blood test, and was convicted of a misdemeanor under a state statute making refusal to take a blood alcohol concentration (BAC) test a crime under the state's implied consent law. A second motorist refused to take a breath test

at the police station after his arrest, and was charged with test refusal in the first degree. A third motorist was arrested and taken to a hospital where he consented to have his blood drawn, but later argued that his consent to the blood test was coerced by the officer's warning that refusal to consent would be a crime. The Supreme Court held: (a) a warrantless breath test conducted as a search incident to arrest does not violate the Fourth Amendment; (b) a warrantless blood test conducted as a search incident to arrest violates the Fourth Amendment, absent exigent circumstances; and (c) a driver cannot be subjected to a criminal penalty for refusal to take a blood test.

Breath tests do not "implicat[e] significant privacy concerns," even though they involve putting a mouthpiece into the mouth and blowing out air from deep in the lungs. Like using swabs to obtain DNA samples or scraping under fingernails, these tests involve a negligible intrusion. (*Id*., at p. 2176.) They take only one bit of information and do not leave any biological sample in the possession of the police. (*Id*. at p. 2177.) And they do not increase the embarrassment inherent in an arrest. They are usually administered in a police station, a patrol car, or otherwise out of public view. In any event, one under arrest has a diminished expectation of privacy. (*Ibid*.)

Officer Machado took the two additional breath samples from defendant after he placed defendant under arrest. Defendant takes the position that *Birchfield* does not apply to this case because it is a boating under the influence case, not a driving under the influence case. We found an Iowa Supreme Court case which rejects defendant's contention. (*State v. Pettijohn* (2017) 899 N.W.2d 1.) We follow it as persuasive authority and uphold the constitutionality of the two breath samples.

The Iowa Supreme Court considered a defendant's argument that *Birchfield*'s holding should not apply to boating under the influence cases:

> Pettijohn argues applying the balancing test the Birchfield Court used to determine whether the search-incident-to-arrest exception applies to arrests for drunk driving yields a different result in the context of drunk boating for two reasons. First, he argues the individual interest at stake in the boating context is more significant than in the driving context because a person has a natural right to

navigate state waterways and does not need a license to operate a boat. Second, he argues the government interest in preventing drunk boating is far less compelling than the government interest in preventing drunk driving. (*Id*. at p. 19.)

The *Pettijohn* court rejected the defendant's arguments:

> We reject this analysis. First, in determining whether the search-incident-to-arrest exception to the Fourth Amendment right to be free from unreasonable searches applies, the individual interest to be assessed is the degree to which a warrantless search will intrude upon his or her privacy interests. Second, though government statistics indicate drunk boating causes far fewer annual fatalities than drunk driving, we conclude the government interest in preventing and deterring injuries and fatalities is similar in the drunk driving and the drunk boating contexts. Though we acknowledge government statistics suggest drunk boating causes far fewer annual fatalities than drunk driving, alcohol is the leading known contributing factor in both fatal boating accidents and fatal motor vehicle accidents.
>
> Applying Birchfield, we conclude the Fourth Amendment permits the administration of a warrantless breath test to determine the BAC of an individual lawfully arrested on suspicion of boating while intoxicated. The BAC test at issue in this case was a breath test rather than a blood test, and Officer Drish administered it after reading an implied-consent advisory to Pettijohn following his lawful arrest. Therefore, we conclude the breath test constituted a search incident to arrest excepted from the Fourth Amendment's warrant requirement under Birchfield.

While the court in *Pettijohn* concluded that the breath test was not constitutional under the Iowa state constitution, its reasoning still applies here because we are concerned here with whether the breath samples implicate constitutional concerns under the Fourth Amendment.

The two breath tests were constitutionally obtained under *Birchfield*. We need not resolve whether the breath samples were validly obtained under the inevitable discovery doctrine.

## **DISPOSITION**

The trial court's order is **AFFIRMED**.

_____
David Reed
Presiding Judge of the Appellate Division


WE CONCUR:

_____
David Rosenberg
Judge of the Appellate Division




_____
Daniel Maguire
Judge of the Appellate Division