[Crim. No. 31257. Second Dist., Div. Five. Sept. 25, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSE GARCIA GALOSCO et al., Defendants and Respondents.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Dean Gits, Leighton A. Nugent, Deputy Public Defenders, and Rosemary Shumsky for Defendants and Respondents.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

**OPINION**

**KAUS, P. J.**—Defendants were charged with burglary in violation of Penal Code section 459. Following a hearing held pursuant to Penal Code section 1538.5 all items of property seized from defendants at the time of their arrest, as well as statements made by them to the police after arrest, were ordered suppressed. When the prosecution announced that it did not have sufficient evidence remaining to proceed to trial, the court dismissed the case (Pen. Code, § 1385). The People appeal, claiming that the court erred in suppressing the evidence.

## FACTS

On May 5, 1977, Warren Burton was alone in his home. His residence is upstairs and is in the vicinity of 7524 Willoughby Street. There are two apartments across the street from where Burton lives. Mr. Burton's attention was drawn to two men near the apartment house across the street, when he observed one man throw a life saver wrapper to another. The second man caught it and threw it away. It appeared to Burton to be a "communication." Burton had previously seen the residents of the house, however he was not personally acquainted with them. Burton observed one of the men ring the doorbell for a "goodly length of time" while the other man stood on the sidewalk. After a couple of minutes, the man at the door went to the back of the house. When the man did not return, Burton called the police. He gave his name and address and said that he was "pretty sure" that a house was being burglarized. He stated that the burglars were two male Latins and described the house. Burton described one man as wearing brown and one as wearing blue. After Burton made the call the man dressed in brown remained standing on the sidewalk opposite the house.

About 12 minutes after calling the police, Burton saw the other man exit from the back of the house to the street with a suitcase and walk away; neither man had had the suitcase before.

Burton ran out of his house. Once outside Burton observed both men near a green car with a white top which was parked about a half block from the house. The man with the suitcase closed the trunk and the suitcase was no longer in the man's hand. The man then entered the car on the passenger side. The other man was already in the car seated behind the driver's wheel.

 Police Officer Donald Tabak was cruising in his police car when he received a radio call alerting him to "possible 459 suspects described as two male Latins, see the [person reporting] on the southeast corner" of Sierra Bonita and another street. At the location he was flagged down by Burton.

The green car was still parked down the block. Burton hurriedly stated, "I am the one who called . . . back up and reverse, down the block,

second to the last car from the left . . . they got the loot in the car . . . it's in a suitcause, it's in the trunk, they're leaving the scene . . ."[1]

Tabak drove past the green car and observed two male Latins inside it. He then made a U-turn with his police vehicle and followed the car to Santa Monica and Cahuenga where he activated his red lights and stopped the vehicle. He found defendants seated in the front seat. They both alighted from the vehicle. He patted them down for weapons, handcuffed them, and placed them under arrest.

Tabak searched the passenger compartment of the vehicle and found a screw driver and pliers underneath the front seat on the passenger's side. He opened the trunk of the car and saw a blue suitcase with brass on it, partially open on the top. Unzipping it further he found a typewriter, a camera, and numerous "Russian-type" coins inside. All of these items, including the suitcase, were ordered suppressed by the trial court.

## DISCUSSION

■ The People claim that Mr. Burton was presumptively a reliable informant because he was a "citizen informant" and that the information he provided was sufficiently detailed to constitute probable cause for the arrest; the subsequent search, they argue, was a valid search of an automobile incident to the arrest. Defendants counter with the claim that Burton did not qualify as a citizen informant and that, in any event, the information he gave to Tabak did not provide probable cause for arrest. We conclude that the search was proper and that the rulings of the trial court must therefore be reversed.

■ In *People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333], the Supreme Court stated the "general proposition that private citizens who are witnesses to or victims of a criminal act . . ." are presumed to be reliable. However, the court qualified that statement by noting that "the rule . . . presupposes that the police be aware of the identity of the person providing the information and his status as a true citizen informant. [Citation omitted.]" (*Id.,* p. 269.) Defendants urge that because Officer Tabak did not know Burton's "identity" at the time of the

[1]Officer Tabak testified that Burton had provided a much more detailed description of what he had observed; Tabak also claimed that he (Tabak) had stopped at the house and seen the inside in disarray before he apprehended defendants. The trial court explicitly rejected Tabak's testimony.

arrest, Burton could not be considered a presumptively reliable citizen informant under *Ramey*.

We do not read this language in *Ramey* as requiring that the arresting officer verify the name of the citizen in order for that person to be a "true citizen informant." Rather, it seems clear that what the court meant was that an informant who did not identify himself to the police—that is, an anonymous informant—could not qualify as a citizen informant. ■ That requirement logically follows from the definition of a citizen informant as ". . . a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement." (*People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814 [124 Cal.Rptr. 585]; *People* v. *Gardner* (1967) 252 Cal.App.2d 320, 324-325 [60 Cal.Rptr. 321].) ■ Certainly Mr. Burton qualified under this definition. It is undisputed that he stated his name and address at the time he called the police and that he acted openly in aid of Officer Tabak when he arrived at the scene. *Ramey* was fully complied with.

■ Having established that Mr. Burton was a true citizen informant and therefore presumptively reliable, we turn to the question of whether Officer Tabak had knowledge of facts sufficient to constitute probable cause to arrest defendants. Initially, Tabak learned through the radio dispatch that he was responding to a "possible 459," i.e., a possible burglary. Tabak was entitled to rely on the information he had received through "official channels." (*People* v. *Lara* (1967) 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202].)

Consequently, when Tabak arrived at the scene he already knew that he was looking for a "possible" burglary. He was immediately confronted by Burton who, obviously panicking about the suspected burglars' imminent escape, managed to sputter that he was the person who had called the police, that the suspects were in a certain car, that the "loot" was in a suitcase in the car trunk, and that Tabak had to act quickly because the suspects were escaping. Given the information relayed earlier to Tabak over his police radio, he could reasonably infer from Burton's hurried statements that Burton had witnessed the burglary and that immediate action was necessary. The urgency of the situation precluded any detailed cross-examination of Burton to elicit more underlying facts.

The totality of the facts known by Officer Tabak would certainly ". . . lead a man of ordinary care and prudence to believe and conscientiously

entertain an honest and strong suspicion that the [defendants were] guilty of a crime." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) In *People* v. *Kilvington* (1894) 104 Cal. 86 [37 P. 799], it was at night when an off-duty police officer saw one man chasing another and yelling, "Stop, thief." The police officer shot and killed the fleeing man, but his manslaughter conviction was reversed by the Supreme Court because the trial court had not instructed the jury that the officer had reasonable cause to arrest. Finding that the totality of the circumstances justified an arrest, the court further stated: "An officer who would refuse to arrest a person fleeing and pursued under the circumstances disclosed in this case, because the charge was not more direct and specific as to the commission of a felony, would be justly censurable for a neglect of official duty." (*Id.*, p. 93.) The same rationale applies in the instant case.

■ The defendants' arrest being valid, in conjunction with Burton's statement that the "loot" was in the trunk, clearly established that Officer Tabak had probable cause to search not only the car, but also the trunk and its contents. (See *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 563, 571 [128 Cal.Rptr. 641, 547 P.2d 417]; *People* v. *Laursen* (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145].)

We recognize a possible issue concerning the search of the suitcase suggested by *United States v. Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]. There are, however, several reasons why we should refrain attempting to decide that issue. First and foremost, since no one raised any *Chadwick* issue at the hearing, several relevant factual issues were not explored.[2] This is, of course, hardly surprising since *Chadwick* was filed on June 21, 1977, and the hearing under review was held just three weeks later. The search itself preceded *Chadwick* by several weeks, which fact suggests another issue not argued and therefore not ripe for decision: whether *Chadwick* made new law and, if so, whether it is to be retroactively applied. These and other possible problems raised by *Chadwick* can be explored after this matter is remanded. All we hold is that on the record before us, the court erred in suppressing the fruits of defendants' arrest.

[2]For example: It appears inferentially from the facts that the suitcase itself was part of the loot. We doubt that *Chadwick* applies to stolen luggage. No one, however, pursued the question whether Officer Tabak reasonably suspected that the suitcase itself was stolen. Further: *Chadwick* is based on the high expectation of privacy with respect to personal luggage. The suitcase here was described as "partially opened on the top." While this certainly suggests a lesser expectation of privacy, more detail concerning the suitcase would certainly have been helpful.

The orders of the trial court suppressing the evidence and dismissing the case are reversed.

Ashby, J., and Hastings, J., concurred.

The petition of respondent Galosco for a hearing by the Supreme Court was denied November 24, 1978.