[No. H000465. Sixth Dist. Sept. 8, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME LANFREY, Defendant and Appellant.

494

## Counsel

Fred Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Dane R. Gillette, Karl S. Mayer and Jeffrey M. Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CAPACCIOLI, J.**—Jerome Lanfrey appeals from a judgment of conviction for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] with an enhancement for intentional infliction of great bodily injury (§ 12022.7) entered following a court trial. (§ 1237.) This case concerns, among other

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

things, the public entity privilege of nondisclosure (Evid. Code, §§ 1041, 1042)[2] as it relates to the identity of a nonparticipating eyewitness to an

---

[2] Evidence Code section 1041 provides: "(a) Except as provided in this section, a public entity has a privilege to refuse to disclose the identity of a person who has furnished information as provided in subdivision (b) purporting to disclose a violation of a law of the United States or of this state or a public entity in this state, and to prevent another from disclosing such identity, if the privilege is claimed by a person authorized by the public entity to do so and : [¶] (1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or [¶] (2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the identity of the informer be disclosed in the proceeding. In determining whether disclosure of the identity of the informer is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered. [¶] (b) This section applies only if the information is furnished in confidence by the informer to: [¶] (1) A law enforcement officer; [¶] (2) A representative of an administrative agency charged with the administration or enforcement of the law alleged to be violated; or [¶] (3) Any person for the purpose of transmittal to a person listed in paragraph (1) or (2). [¶] (c) There is no privilege under this section to prevent the informer from disclosing his identity."

Evidence Code section 1042 provides: "(a) Except where disclosure is forbidden by an act of the Congress of the United States, if a claim of privilege under this article by the state or a public entity in this state is sustained in a criminal proceeding, the presiding officer shall make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material. [¶] (b) Notwithstanding subdivision (a), where a search is made pursuant to a warrant valid on its face, the public entity bringing a criminal proceeding is not required to reveal to the defendant official information or the identity of an informer in order to establish the legality of the search or the admissibility of any evidence obtained as a result of it. [¶] (c) Notwithstanding subdivision (a), in any preliminary hearing, criminal trial, or other criminal proceeding, any otherwise admissible evidence of information communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the accused of the offense charged, is admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure. [¶] (d) When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the

assault who furnished confidential information regarding the offense to the police.

Following the original decision of this court affirming Lanfrey's conviction, Lanfrey filed a petition for review which our Supreme Court granted. The cause has been retransferred to this court with directions to determine (1) ". . . whether the undisclosed witness was an 'informer' within the meaning of Evidence Code sections 1041 and 1042 . . ." and (2) ". . . if so, whether disclosure is nevertheless required under *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721] and *People* v. *Lee* (1985) 164 Cal.App.3d 830, 835-836 [210 Cal.Rptr. 799]."

Lanfrey specifically challenges (1) the trial court's denial of his motion to disclose the identity of the eyewitness-informer on the ground that the informer was a material witness on the issue of guilt, (2) the court's denial of his motion to suppress evidence (§ 1538.5, subd. (m)) and concomitant motion to disclose the identity of the eyewitness who supplied information which contributed to probable cause to arrest, and (3) the use of his extrajudicial statements for impeachment purposes. We again affirm.

I

*Nondisclosure of Confidential Eyewitness-informer's Identity*

A

*Procedural History*

In the municipal court, Lanfrey moved to compel disclosure of a confidential informant on the ground that the informant was a material witness on the issue of guilt. It was established through the examination of an officer that a nonparticipating eyewitness to the alleged assault confidentially conveyed information to the police. The People invoked the privilege to refuse to disclose the informant's identity. Following an in camera hearing, the municipal court denied Lanfrey's disclosure motion.

Prior to trial, Lanfrey renewed his disclosure motion before the superior court. The prosecution again asserted the privilege to refuse to disclose the informant's identity and requested an in camera hearing. At the hearing, the court reviewed the transcripts of the previous in camera hearing and

---

evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

satisfied itself that the eyewitness-informer ". . . would not exonerate or exculpate the defendant in any way . . . ." The court denied the disclosure motion.

During trial, Lanfrey testified that he stabbed the victim because he thought the victim was holding a knife and was going to stab him. However, he then admitted the victim had merely been holding a beer bottle which he mistakenly believed was a knife. Following that testimony, Lanfrey once again renewed his disclosure motion on the ground he was for the first time asserting that he acted in self-defense while intoxicated[3] and the relevant facts might not have been explored during the prior in camera hearings. The trial judge, who had not ruled on defendant's prior disclosure motions nor read the in camera transcript, summarily denied Lanfrey's motion.

B

*Eyewitness as an Informer*

The first issue posed by the Supreme Court is whether the undisclosed eyewitness was an "informer" within the meaning of Evidence Code sections 1041 and 1042. Evidence Code section 1041, subdivision (a), establishes that the public entity privilege of nondisclosure applies to ". . . the identity of a person who has furnished information as provided in subdivision (b) [of Evidence Code section 1041] purporting to disclose a violation of law of the United States or of this state or a public entity in this state . . . ." Subdivision (b) of that section states: "This section applies only if the information is furnished in confidence by the *informer* to: [¶] (1) A law enforcement officer; [¶] (2) A representative of an administrative agency charged with the administration or enforcement of the law alleged to be violated; or [¶] (3) Any person for the purpose of transmittal to a person listed in paragraph (1) or (2)." (Italics added.) Thus, the term "informer" in subdivision (b) refers back to subdivision (a), which indicates that an "informer" is one who furnishes information purporting to disclose a violation of law.

However, the statutory privilege of nondisclosure does not apply to every "informer." The privilege applies only if the information is furnished in confidence to specified persons, the privilege is claimed by a person authorized by the public entity to do so, and disclosure is forbidden by an act of the United States Congress or California statute or disclosure of the inform-

---

[3] Defendant told police after his arrest that he was not in the bar at the time of the assault and did not testify at the preliminary hearing.

er's identity is against the public interest. (Evid. Code, § 1041, subds. (a) and (b).)

■ Evidence Code section 1042 sets forth when the privilege of nondisclosure may be invoked without the public entity suffering an adverse ruling. Although the section uses the words "informer" and "confidential informant," it does not suggest any further definition of those terms. As we read Evidence Code sections 1041 and 1042, a nonparticipating eyewitness who furnishes information concerning a crime in confidence to police is both an "informer" and a "confidential informant" within the meaning of those sections.

■ Lanfrey argues that ". . . the only reasonable interpretation of [Evidence Code] Section 1041 is that the [undisclosed] eyewitness to the stabbing was not an informer" because ". . . the witness had never provided the police with information in the past" and ". . . received nothing in return for reporting the stabbing." He completely discounts the fact that the witness approached police with information regarding Lanfrey's commission of the offense and his whereabouts, but requested that his identity remain confidential. He implies that it would violate public policy if the identity of any eyewitness could be withheld simply because he requested confidentiality.

There are several flaws in this argument. First, Evidence Code section 1041 does not require that the information be furnished as a part of an ongoing relationship with authorities or in exchange for some benefit. Second, the privilege of nondisclosure does not apply unless information was "furnished in confidence." The requirement of confidence eliminates from the ambit of the privilege most eyewitnesses who simply provide information to authorities upon being interviewed. Third, the existence of the privilege where information is provided in confidence on a one-time basis is consistent with its public policy purpose of encouraging and protecting communication by citizens as an aid to effective law enforcement. (See *People* v. *McShann* (1958) 50 Cal.2d 802, 806 [330 P.2d 33].) Thus, Lanfrey's arguments are not well taken.

## C

*Disclosure of Eyewitness-informer*

■ The next question presented is whether disclosure is nevertheless required. The Supreme Court has directed our attention to *Price* v. *Superior Court* (1970) 1 Cal.3d 836 [83 Cal.Rptr. 369, 463 P.2d 721] and *People* v. *Lee* (1985) 164 Cal.App.3d 830 [210 Cal.Rptr. 799]. After a thorough

review of those cases and other decisions of our high court, we find that disclosure is not mandated under the circumstances of this case.

In *Price* v. *Superior Court, supra,* 1 Cal.3d 836, the defendant was charged with discharging a firearm at a vehicle, assault, and attempted murder. (*Id.* at pp. 838-839.) He sought to compel the trial court to suppress evidence obtained pursuant to a search warrant and to order disclosure of the identity of a confidential informer. (*Ibid.*) The search warrant affidavit contained statements of the informer indicating that the informer had overheard statements implicating Price from persons who the informer knew were present in the immediate area of the shooting. (*Id.* at p. 839.) The affidavit did not contain facts affirmatively establishing that the informer had been a percipient witness to the shooting. (*Ibid.*)

Citing earlier Supreme Court decisions, the court in *Price* stated: "When it appears from the evidence that an informer is a material witness on the issue of the defendant's guilt, the informer's identity may be helpful to the defendant and nondisclosure would deprive him of a fair trial. [Citation.] The People must either disclose the informer's identity or incur a dismissal. [Citation.] [¶] The defendant need not prove that the informer would give testimony favorable to the defense in order to compel disclosure of his identity, nor need he prove that the informer was a participant in or even an eyewitness to the crime." (1 Cal.3d at pp. 842-843.)

■ As to the extent of defendant's burden of proof on a disclosure motion, the court quoted its earlier decision of *Honore* v. *Superior Court* (1969) 70 Cal.2d 162 [74 Cal.Rptr. 233, 449 P.2d 169]. (*Price* v. *Superior Court, supra,* 1 Cal.3d at p. 843.) In *Honore,* the court had stated: "[A defendant's] burden extends only to a showing that 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' (*People* v. *Williams* (1958) 51 Cal.2d 355, 359 [333 P.2d 19].) 'That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. "No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. *It is the deprival of the defendants of the opportunity of producing evidence which* MIGHT *[original emphasis] result in their exoneration which constitutes the error in this case, and we cannot assume because the prosecution evidence may seem strong that the undisclosed evidence might not prove sufficient to overcome it in the minds of the jurors.* " [Citation.]' (Original italics.) (*People* v. *Garcia* [1967] 67 Cal.2d 830, 839-840.) . . . [¶] [B]y the very nature of the problem here confronting defendants it is impossible for them to state

*facts* which would show the materiality of the informant's testimony. Since they do not know his identity they cannot possibly state factually what he will say if he is required to testify. All that defendants are required to do is to demonstrate 'a reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [their] exoneration.' *(People* v. *Garcia, supra,* 67 Cal.2d 830, 840.)" *(Honore* v. *Superior Court, supra,* 70 Cal.2d at pp. 168, 170.)

Applying the above standard of materiality in *Price,* our Supreme Court found that information given to the police officer by the informer was sufficient to ". . . establish a 'possibility' that the informer himself was present at the scene of the crime." The court, therefore, concluded that Price had ". . . made a sufficient showing of a 'possibility' that the informer was a material witness on the issue of guilt." *(Price* v. *Superior Court, supra,* 1 Cal.3d at p. 844.)

We think it is significant that in *Price* the trial court had not held an in camera hearing pursuant to subdivision (d) of Evidence Code section 1042.[4] Prior to enactment of subdivision (d), there was no provision for an in camera hearing wherein the prosecution could present proof that the informer could not give evidence on the issue of guilt which might result in the defendant's exoneration and, thereby, rebut a prima facie showing of materiality.

In *People* v. *Lee* (1985) 164 Cal.App.3d 830 [210 Cal.Rptr. 799], the defendant was charged with possession of phencyclidine for sale. *(Id.* at p. 833.) She had unsuccessfully sought the disclosure of the identity of a confidential informant allegedly material to the issue of guilt. *(Ibid.)* A search warrant affidavit stated that the informant told the affiant that the informant had personally observed defendant's possession and sale of PCP from defendant's residence. *(Id.* at p. 837.) PCP was discovered at the defendant's residence upon execution of the search warrant. *(Id.* at pp. 833-834.)

The trial court held an in camera hearing, during which the informant did not testify under oath, and then denied the defendant's disclosure motion. (164 Cal.App.3d at p. 833.) On the initial appeal, the reviewing court reversed the conviction because the informant did not testify under oath and remanded with directions to conduct a further in camera hearing under Evidence Code section 1042 and to reinstate the judgment if it found no

---

[4]The *Price* opinion was handed down during January 1970. *(Price* v. *Superior Court, supra,* 1 Cal.3d at p. 836.) Subdivision (d) of Evidence Code section 1042 was not in effect until January 1, 1970 (Stats. 1969, ch. 1412, § 1, pp. 2892-2893; Cal. Const., art. IV, § 8), and nothing in the opinion indicates that an in camera hearing allowed by that subdivision was held.

reasonable possibility nondisclosure would deprive defendant of a fair trial. (*Id.* at pp. 833-834.) Pursuant to the remittitur, the trial court held a second in camera hearing, during which the informer did not personally appear and testify. (*Id.* at pp. 840-841.) The trial court concluded that " '. . . there [was] no way that the informant could reasonably be expected to be a material witness on the question of guilt or innocence of the greater offense of possession for sale. . . .' " (*Id.* at pp. 839-840.)

In its second decision in the case, the appellate court reviewed the Supreme Court's definition of materiality: " '. . . An informant is a "material witness" if it appears from the evidence presented that there is a reasonable possibility the informant could give evidence on the issue of guilt which might result in a defendant's exoneration. [Citation.] . . .' [Citation.]" (*People* v. *Lee, supra,* 164 Cal.App.3d at p. 835.) The court then found: "[O]nly the informant could testify as to whether defendant personally had been selling PCP, whether she or another or others exercised dominion and control over the drugs and the nature and extent of the informant's personal knowledge of these matters. The materiality of the informer's possible testimony could not be determined by the characterization of his statement to the police by a police witness or by conclusions drawn from such statement by such police witness. [Citation.]" (*Id.* at p. 840.) The court concluded that the trial court ". . . erred in its conclusion that the informant was not a possible material witness . . ." because there was a reasonable possibility that the informer could give evidence on the issue of guilt that could result in defendant's exoneration regarding the "for sale" aspect of possession. (*Ibid.*) The court modified the judgment to reflect a conviction of simple possession of PCP. (*Id.* at p. 841.)

*People* v. *Lee, supra,* is distinguishable from the present case because in *Lee* the informer did not testify under oath in any in camera hearing. Therefore, the prima facie showing of materiality was not refuted based upon the specific facts of the case. Here, the informer did testify under oath and it was reasonable to infer from the testimony that the informer could not give evidence on the issue of guilt which might result in a defendant's exoneration.

We recognize that in *People* v. *Lee, supra,* the appellate court said that a participating or a nonparticipating eyewitness to the offense was ipso facto a material witness who must be disclosed, citing *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412 [112 Cal.Rptr. 485]. (*People* v. *Lee, supra,* 164 Cal.App.3d at pp. 835-836.) However, none of the cases cited in *Williams* v. *Superior Court, supra,* 38 Cal.App.3d 412, as authority for the "ipso facto" proposition involved an in camera hearing.

One of the cases relied upon by *Williams* was *Roviaro* v. *United States* (1957) 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623], the landmark United States Supreme Court case regarding disclosure of informers. There, the federal government had withheld the identity of a confidential informant from a defendant charged with narcotics offenses. (*Id.* at p. 55 [1 L.Ed.2d at p. 642].) No in camera hearing was held.

The United States Supreme Court stated: "[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (*Roviaro, supra,* 353 U.S. at p. 62 [1 L.Ed.2d at p. 646].) The Court indicated that the materiality of an informer's possible testimony had to be determined by reference to the particular offense charged and the evidence. (*Id.* at pp. 62-63 [1 L.Ed.2d at p. 646].) It found that the disclosure of the identity of the confidential informant in that case was required because the informant had helped set up and had participated in the drug transaction which was the basis of a charge, the informant was the sole witness other than the defendant, and his testimony ". . . might have disclosed an entrapment." (*Id.* at pp. 62-65 [1 L.Ed.2d at pp. 646-647].) In this case the informant was neither the only witness to nor a participant in the offense and an in camera hearing was held.

We are also mindful that California Supreme Court decisions other than *Price* v. *Superior Court, supra,* 1 Cal.3d 836, have also indicated in dicta that an informer who was a nonparticipating eyewitness to the offense was necessarily a material witness. (See *People* v. *Garcia* (1967) 67 Cal.2d 830, 837 [64 Cal.Rptr. 110, 434 P.2d 366]; *People* v. *Hammond* (1960) 54 Cal.2d 846, 850 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Williams* (1958) 51 Cal.2d 355, 359 [333 P.2d 19]; *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33].) However, none of those cases involved an in camera hearing in which the court could evaluate the particular evidence which an informer could give. The addition of subdivision (d) created the opportunity for the prosecution to establish that nondisclosure would not compromise a defendant's due process rights even where the defendant had established a prima facie case for disclosure. (See *People* v. *Coleman* (1977) 72 Cal.App.3d 287, 297 [139 Cal.Rptr. 908].)

Evidence adduced at an in camera hearing can potentially establish that there was no reasonable possibility that a particular percipient eyewitness-informer could give evidence on the issue of guilt which might result in a

defendant's exoneration. (But cf. *People* v. *Aguilera* (1976) 61 Cal.App.3d 863, 870, fn. 6 [131 Cal.Rptr. 603].) In such a situation, the witness would not be material under the test for materiality established by the California Supreme Court. (See *People* v. *Wilks* (1978) 21 Cal.3d 460, 468-469 [146 Cal.Rptr. 364, 578 P.2d 1369]; *People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1]; *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]; *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 843; *Honore* v. *Superior Court, supra,* 70 Cal.2d 162, 168; *People* v. *Garcia, supra,* 67 Cal.2d 830, 839-840.)

In this case, Lanfrey assigns error, contending that the informant might have been able to support his ". . . testimony that he reasonably believed that he was about to be assaulted by [the victim]." We have reviewed the transcripts of the in camera hearing and find that the testimony of the eyewitness-informer established that there was no reasonable possibility that the informer could give evidence on the issue of guilt which might result in Lanfrey's exoneration. Furthermore, even assuming arguendo that the court erred in summarily denying the renewed disclosure motion during trial without at least reviewing the in camera hearing transcripts, the error was harmless because (1) at the time of his renewed motion Lanfrey had already undermined his self-defense theory by admitting he had mistaken a beer bottle for a knife which indicated he had no reasonable belief in the need to prevent an imminent stabbing (see *People* v. *Enriquez* (1977) 19 Cal.3d 221, 228 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73]; *People* v. *Fisher* (1948) 86 Cal.App.2d 24, 33-35 [194 P.2d 116]) and (2) the testimony of the eyewitness-informer established that there was no reasonable possibility that the informer could give evidence which might support a proper self-defense theory.

## II

### Motion to Suppress

Lanfrey moved to suppress evidence, including clothing and a buck knife, obtained during a search of his motel room. (§ 1538.5.) The search was conducted pursuant to his consent following his warrantless arrest inside the room. Lanfrey argued that his consent was the tainted fruit of his unlawful arrest because the officers had neither probable cause to arrest nor an arrest warrant.

During the course of the hearing on the motion, Lanfrey sought the disclosure of the identity of a confidential informant who, after the stabbing, had provided police with information leading to Lanfrey's arrest. The trial court did not expressly rule on the disclosure motion, but denied the motion

to suppress, finding ". . . there was sufficient probable cause to arrest the defendant and . . . exigent circumstances existed in this particular case to justify a warrantless arrest of defendant inside his motel room."

## A

### *Facts*

Reviewed in accordance with the proper standard (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]), the evidence adduced at the suppression hearing and the reasonable inferences therefrom show the following. At approximately 9 o'clock on the evening of June 18, 1983, San Jose Police Officer Paul Salerno was on uniformed patrol. While in his vehicle, he heard a radio broadcast over regular police channels reporting a stabbing at the Three Star Bar in downtown San Jose. The suspect was described physically as a Negro male, who was approximately six feet, three or four inches tall and weighed two hundred pounds. The broadcast mentioned that the suspect's name was possibly something like Charles Evers or Elliott. The physical description of the suspect reminded Officer Salerno of an individual whom he had interviewed at the same bar two or three days earlier.

On that prior date, Officer Salerno had been on foot patrol passing the Three Star Bar when he heard a loud disturbance coming from inside. Upon entering to investigate, the officer saw an individual ". . . who was just yelling and screaming for no apparent reason." "He was standing by himself at the pool table yelling and appeared quite agitated." "The people at the pool table had . . . backed away from him, giving him a clear berth . . . ." Salerno escorted him outside and conducted a pat-down search, which uncovered a "folding lock-back buck knife." In the course of interviewing the man, Officer Salerno learned that his name was Lanfrey, he was from Seattle, Washington, he was in San Jose temporarily, and he possessed a car. After speaking with him, the officer returned his knife.

Officer Salerno thought the individual he had interviewed ". . . matched quite closely with the description given on the broadcast of the suspect of the stabbing." Consequently, after hearing the broadcast, Salerno and his partner, Officer Mason, decided to investigate the connection.

Officer Salerno contacted the officers who had responded to the stabbing report. Salerno learned that the victim might not survive the attack and there had been ". . . copious amounts of blood and bleeding at the scene."

Officers Salerno and Mason arrived at the Three Star Bar approximately an hour and a half after the stabbing incident. According to Salerno, an

individual approached him outside the bar. The officer had previously seen the individual on occasion in the bar and been watching, without success, for signs of being under the influence of drugs because of old "tracks" on his arms. The individual asked that his identity remain confidential. The individual had not supplied information to Salerno previously.

The informant told Officer Salerno that ". . . an individual known to him as . . . either Charles Evers or Charles Elliot had done the stabbing [and] he had . . . witnessed it." The informant described the man's dress and buck teeth. He also told the officer ". . . the individual was an out-of-state resident staying at the Flamingo Motel, Room 110" who ". . . was just down in San Jose . . . on a temporary basis."

Following their visit to the bar, Officers Salerno and Mason proceeded to room 110 at the Flamingo Motel. It was approximately 12:30 a.m. There they found another couple was registered to and staying in that room.

Afterward they met with two other officers working on the case, Officers Shaver and Rendler. Officer Rendler told them that ". . . he had come across an individual who identified himself as Jerome Lanfrey, that Mr. Lanfrey matched the physical description given by both the original broadcast from the responding police units and [Officer Salerno], and that Mr. Lanfrey was staying at the Flamingo Hotel in Room 215 . . ." The four officers then returned to the Three Star Bar.

At the bar, Officer Salerno spoke with a part-time bartender who had also been working when Salerno entered the premises two or three nights earlier. The bartender told him that ". . . the person that had done the stabbing was the same individual that [Salerno] had interviewed two nights previous when . . . [responding] to the disturbance of the man shouting at the pool table."

The four officers went back to the Flamingo Motel. It was approximately 2:30 a.m. Officer Salerno's purpose for returning was to verify that ". . . the individual in Room 215 was in fact the same individual that [he] had interviewed . . ." and to arrest him for the stabbing incident once his identity was confirmed.

The officers knocked on the door to room 215 of the Flamingo Motel, stated they were San Jose police officers and wanted to speak with him ". . . about the incident that had occurred downtown earlier," and requested him to open the door. When Lanfrey opened the door, the officers walked into the room, Officer Salerno announced Lanfrey was the same

individual he had interviewed several nights earlier, and one of the officers advised Lanfrey he was under arrest.

Officer Rendler requested permission to search the room and Lanfrey consented. A knife and a brown suit of wet clothes were discovered during the search.

The parties stipulated at the suppression hearing that Lanfrey's consent was free and voluntary if the court found that the warrantless arrest was proper.

B

*Failure to Disclose Identity of Informant*

Lanfrey argues that the court should have compelled the prosecution to disclose the identity of the nonparticipating eyewitness at the hearing on his motion to suppress. We find no error.

■ Subdivision (c) of Evidence Code section 1042 provides: "Notwithstanding subdivision (a), in any preliminary hearing, criminal trial, or other criminal proceeding, any otherwise admissible evidence of information communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the accused of the offense charged, is admissible on the issue of reasonable cause to make an arrest . . . without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure." Subdivision (c) was applicable here since the nonparticipating eyewitness was not a material witness on the issue of guilt or innocence. The trial court was required to determine whether the eyewitness was reliable. It impliedly did find the eyewitness reliable and the evidence produced supports that determination.

■ A witness of a crime is presumptively reliable unless the circumstances cast doubt on the witness's information. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [545 P.2d 1333].) "[N]either a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to . . . criminal activities report their observations in detail to the authorities." (*Ibid.*, fn. omitted.) The fact that Officer Salerno had already been aware of the existence of the undisclosed informant does not cast doubt on the informant's reliability since there is no evidence indicating

that the informant had any motivation other than aiding police. (See *People v. Galosco* (1978) 85 Cal.App.3d 456, 460-461 [149 Cal.Rptr. 407].)

Furthermore, no one has disputed that the bartender, who was a reliable citizen witness had confirmed the officer's suspicion that the man involved in the earlier incident was the same man who committed the assault. On that basis alone, the officers had probable cause to arrest defendant. (*Illinois v. Gates* (1983) 462 U.S. 213, 232-239 [76 L.Ed.2d 527, 544-549, 103 S.Ct. 2317]; *Beck v. Ohio* (1964) 379 U.S. 89, 91 [13 L.Ed.2d 142, 145, 85 S.Ct. 223]; *People v. Talley* (1967) 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) Disclosure is not required where reasonable cause for arrest exists apart from an informant's communication. (See *People v. Williams, supra,* 51 Cal.2d 355, 359; *Priestly v. Superior Court* (1958) 50 Cal.2d 812, 816, 819 [330 P.2d 39].)

## C

### Warrantless Arrest

The People successfully sought to justify the warrantless arrest of Lanfrey inside his motel room on the ground of exigent circumstances. They now contend the following circumstances support the trial court's finding of exigency: (1) the gravity of the offense, (2) the time of night, (3) Lanfrey's prior possession of a knife indicating he might be armed, (4) Lanfrey's status as a "highly mobile" transient, and (5) the possibility ". . . further delay would frustrate the collection of evidence . . . ." Lanfrey argues that no exigency existed at the time of his arrest because a substantial period of time had elapsed since the commission of the crime, there was no fact indicating he intended to flee or destroy evidence, and the lateness of the hour was not an exigent circumstance.

■ "As a general matter, '[a] peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person arrested has committed a felony.' [Citations.] However, . . . article I, section 13, of the California Constitution and the Fourth Amendment of the federal Constitution prohibit warrantless arrests within the home, even upon probable cause, in the absence of exigent circumstances." (*People v. Campa* (1984) 36 Cal.3d 870, 878 [206 Cal.Rptr. 114, 686 P.2d 634]; see *People v. Ramey* (1976) 16 Cal.3d 263, 270-277 [127 Cal.Rptr. 629, 545 P.2d 1333]; *Payton v. New York* (1980) 445 U.S. 573, 589-590 [63 L.Ed.2d 639, 652-653, 100 S.Ct. 1371].)

The same constitutional protection extends to individuals sought to be arrested within a motel or hotel room serving as their temporary living

quarters. (*People* v. *Kilpatrick* (1980) 105 Cal.App.3d 401, 410 [164 Cal.Rptr. 349]; see also *People* v. *Escudero* (1979) 23 Cal.3d 800, 807 [153 Cal.Rptr. 825, 592 P.2d 312]; *Stoner* v. *California* (1964) 376 U.S. 483, 490 [11 L.Ed.2d 856, 861, 84 S.Ct. 889].)

■ "Exigent circumstances" means ". . . an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276.) "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*Ibid.*)

We further note that federal constitutional standards govern the exclusion of evidence in this case. (Cal. Const., art. I, § 28; *In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Smith* (1983) 34 Cal.3d 251, 258-259 [193 Cal.Rptr. 692, 667 P.2d 149].) While the United States Supreme Court has yet not delineated the scope of the exception for exigent circumstances,[5] it did recognize *Dorman* v. *United States* (D.C. Cir. 1970) 435 F.2d 385, as ". . . a leading federal case defining exigent circumstances . . ." in a warrantless arrest situation. (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 751-752 [80 L.Ed.2d 732, 744, 104 S.Ct. 2091].)

*Dorman* found the following factors, among others, relevant to a determination of exigent circumstances: (1) the gravity and violence of the offense, (2) the strength of the probable cause showing, (3) the facts indicating the suspect would be armed, (4) the strength of the showing that the suspect would be in the premises to be entered, (5) the likelihood of escape, (6) the delay which would be involved in obtaining a warrant. (*Dorman* v. *United States, supra,* 435 F.2d at pp. 391-396; see also *United States* v. *Davis* (8th Cir. 1986) 785 F.2d 610, 615.) *Dorman* also observed that the nighttime factor is a two-edged sword: "On the one hand . . . the late hour may underscore the delay (and perhaps impracticability of) obtaining a warrant, and hence serve to justify proceeding without one. On the other hand, the fact that an entry is made at night raises particular concern over its reasonableness . . . ." (*Dorman* v. *United States, supra,* 435 F.2d at p. 393.)

Both federal cases and California cases have also found exigency where there was a real threat that a delay would result in the destruction of evidence. (See *People* v. *Kilpatrick, supra,* 105 Cal.App.3d 401, 409-410; *People* v. *Keltie* (1983) 148 Cal.App.3d 773, 779-780 [196 Cal.Rptr. 243];

[5]The court has found exigency in cases involving hot pursuit (*United States* v. *Santana* (1976) 427 U.S. 38, 42-43 [49 L.Ed.2d 300, 305, 96 S.Ct. 2406] and danger to human life (*Warden* v. *Hayden* (1967) 387 U.S. 294, 298-299 [18 L.Ed.2d 782, 787, 87 S.Ct. 1642]).

*United States* v. *Davis, supra,* 785 F.2d at p. 615; *United States* v. *Gray* (9th Cir. 1980) 626 F.2d 102, 105.)

It is true that at the time defendant Lanfrey was arrested in his motel room, approximately five and a half hours had elapsed since the stabbing incident. However, during that period, the officers had been engaged in an ongoing field investigation leading them to Lanfrey. (See 2 LaFave, Search and Seizure (2d ed. 1987) § 6.1(f), pp. 600-602.) There does not appear to have been any unjustified delay by the officers during which probable cause had jelled and a warrant could have been obtained. (See § 813.)

The assault was a vicious, life-threatening attack. (Cf. *Welsh* v. *Wisconsin, supra,* 466 U.S. 740, 753 [80 L.Ed.2d 732, 745].) Only a few days previously, the suspect had also acted in a volatile manner. The officers had reason to believe that the suspect was armed with a knife and could be a risk to others.

The officers had obtained reasonably trustworthy information making it very probable that Lanfrey was the individual who had committed the assault. They had also possessed information that Lanfrey was from out of state, was temporarily residing in a particular motel room, and owned a car.

Importantly, the amount of blood involved in the stabbings indicated that the suspect's clothing and his knife would be blood stained. An arrest would prevent the suspect from destroying that evidence.

Viewed as a whole, the circumstances facing the officers were sufficiently urgent to justify a warrantless arrest of Lanfrey in his motel room.

### III

#### Statements To Police

■ At trial, Lanfrey testified on his own behalf. He admitted the stabbings but asserted that he had acted in self-defense. The prosecution attempted to impeach him with his earlier statements to police following arrest indicating he was not in the Three Star Bar at the time of the assault. Defense counsel objected on the ground there was no "Miranda foundation."[6]

The prosecution argued that article I, section 28, subdivision (d) of the California Constitution (truth-in-evidence provision), which was adopted

---

[6]*Miranda* v. *Arizona* (1966) 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723, 86 S.Ct. 1602, 10 A.L.R.3d 794].

by initiative measure in 1982 (Proposition 8), effectively abrogated *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272]. *Disbrow* had held that ". . . the privilege against self-incrimination of article I, section 15, of the California Constitution precludes use by the prosecution of any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny." (*Id.* at p. 113.) The prosecution asserted that impeachment was permissible under *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643]. In *Harris,* the United States Supreme Court held that extrajudicial statements, which were made to police under circumstances rendering them inadmissible under *Miranda* on the prosecution's case in chief, could be used to impeach a testifying defendant whose trial testimony was inconsistent with those statements. (*Id.* at pp. 222-226 [28 L.Ed.2d at pp. 3-5].) The trial court overruled the objection. This ruling has been confirmed as correct by *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], which held that the *Disbrow* decision was abrogated by Proposition 8.

The judgment is affirmed.

Agliano, P. J., and Brauer, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 8, 1988. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.