[No. B044318. Second Dist., Div. One. June 28, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
SIMON DUVAL, Defendant and Appellant.

1106

COUNSEL

Carolyn J. Fershtman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Mark Alan Hart and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TAYLOR, J.*—

INTRODUCTION

Appellant was charged, by an information filed October 12, 1988, with violations of Health and Safety Code sections 11351, possession for sale of a controlled substance, and 11357 subdivision (a), possession of concentrated cannabis, both felonies. He entered not guilty pleas to both charges. Appellant's motions to quash and traverse the search warrant and to suppress evidence under Penal Code section 1538.5, and to discover and cross-examine the confidential informant were denied.

On June 20, 1989, appellant waived his right to trial, withdrew his earlier plea of not guilty to count one and pled nolo contendere to a violation of Health and Safety Code section 11351. The remaining count was dismissed in furtherance of justice. Appellant was granted probation on certain terms and conditions which included an order that he spend 180 days in county jail. He was granted bail on appeal and the court stayed execution of the jail time imposed pending his appeal.

Appellant filed timely notice of appeal.

---

*Assigned by the Chairperson of the Judicial Council.

We affirm the rulings below denying appellant's motions and, accordingly, judgment of conviction is affirmed.

## FACTS AND PROCEDURAL HISTORY

On December 3, 1987, a search warrant for appellant's residence and person was issued based on information contained in the affidavit submitted by Jack B. Miller, a Deputy Sheriff of Los Angeles County. The affidavit[1] provided, in pertinent part, as follows:

"Between the dates of 11-30-87 & 12-3-87 I contacted a confidential informant, hereafter called C.I. #1 in this affidavit. C.I. #1 currently has a case pending in the Los Angeles County Judicial District. C.I. #1 told me that a person known to him/her as Simon Duval, described as a male Frenchman, brown hair, brown eyes, 6', 160-170 lbs., 30-33 years is selling quantities of cocaine from his residence at 1223-½ Havenhurst Dr., West Hollywood, hereafter called the location.

"C.I. #1 told me that within 4 days prior to me receiving this information that he/she has been inside of the location & saw Simon Duval prepare & sell cocaine to customers.

"C.I. #1 also told me that he/she knows cocaine users who tell him/her that the cocaine they buy from Simon Duval at the location, gives them the desired effect which is the same effect they get when they have used cocaine on other occasions.

"I have questioned C.I. #1 carefully about identity, use, preparation, packaging, sale & price of, the C.I. #1 was quite knowledgeable about cocaine.

"C.I. #1 stated that Duval drives a red Fiat Lic. 2FLB687.

"A DMV check showed that the Fiat is a 1984 model registered to Simon Duval, 1223-½ Havenhurst Dr., West Hollywood.

"∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙    ∙

"On 12-2-87 I contacted fellow narcotics officer S. Silva, West Hollywood station and asked if he had any information in his card files about Simon Duval.

---

[1] This court has, pursuant to rule 12(a), California Rules of Court, augmented the record on appeal to include the search warrant and affidavit admitted into evidence before the magistrate in municipal court on September 27, 1988.

"Dep. Silva told me that 6 months ago he received information from a confidential citizen informant, hereafter called C.I. #2. C.I. #2 had told Dep. Silva the following:

"A male, matching the description that I have of Simon Duval, was selling cocaine from his residence at 1223-½ Havenhurst Dr., West Hollywood. C.I. #2 believed this because he/she saw numerous individuals enter the location, mostly during the night, stay a short period of time & then leave. The C.I. #2 believed the resident was selling cocaine because he/she saw many of the short time visitors stop in the car port (*sic*) underneath the resident's apartment, take a spoonful of a white powder from a baggie & snort the powder into their noses.

"C.I. #2 did not request any favors or monetary gain, he/she just wanted the police to arrest a drug dealer.

"On 12-2-87 I conducted a one hour surveillance of the location. During that time I observed 4 individuals, all male whites, enter the location separately & at different times. Each male stayed for a period of one to four minutes, then exited.

"It has been your affiants experience that this type of activity is indicative of narcotics trafficking.

"A criminal history check showed that Simon Duval has been arrested once for petty theft and that he has a traffic warrant.

"Your affiant requests that the identity of the informants remain confidential for the following reasons: disclosure of the informant's identity would endanger the safety and well being of the informant, and disclosure would destroy the informant's future usefulness to law enforcement in detecting criminal activity."

According to the testimony of John Dickeson, a Deputy Sheriff of Los Angeles County, at the preliminary hearing, Deputy Miller and others went to appellant's residence on December 4, 1987. Deputy Miller knocked on the door, stated he had a search warrant and requested entry. Footsteps were heard running away from the door toward the rear of the apartment. Believing that the person inside might be arming himself or trying to destroy evidence, Detective Dickeson forced open the front door. He saw appellant inside. In Detective Dickeson's presence, Deputy Miller advised appellant of his *Miranda* rights. (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

Appellant stated that he understood his rights and said he would speak to the officers without an attorney. He told the officers he lived in the apartment by himself and that he did sell cocaine, but only to his friends. He said he was a small dealer and asked why the officers wanted him when "there are bigger dealers out there."

Appellant led the deputies to a bedroom and gave them a key to a safe therein. The officers were unable to gain access to the safe with the key and forced the safe open. From inside the safe the officers removed 5.87 grams of cannabis, 3 grams of marijuana, 27.07 grams of powder resembling cocaine, a Deering scale, seven vials, seven baggies and a sifter-grinder. From other locations within the apartment the officers recovered $1,380 cash, a shotgun, one or two handguns and an electronic scale.

As a consequence of the search, appellant was arrested and charges were filed against him.

In a strange and tragic twist of fate, Deputy Miller was killed while on duty serving a search warrant in another unrelated matter. The date of his death is not set forth in the record, but it apparently occurred sometime before March 28, 1988, the date on which defense counsel filed a notice of motion to quash and traverse the search warrant in the municipal court. In points and authorities filed by defense counsel on June 13, 1988, in support of his motion, counsel alluded to an "attached declaration" in which "defendant asserts that the statement sworn to by the affiant to the effect that the informant was in defendant's home and observed the sale of cocaine is a false statement." No such declaration was, in fact, appended and the magistrate so noted when the matter was before her on September 27, 1988.

On September 27, 1988, the magistrate permitted defense counsel to put appellant on the stand, under oath, on defense counsel's request to make his " 'offer of proof,' i.e., [that] the defendant [would] take the stand and testify that the facts stated by [the] informant . . . are not true." After reviewing the affidavit, appellant testified that the statement attributed to the informant was completely false and that, referring to the purported informant, "I can honestly tell you . . . no such person exists." Following appellant's testimony and argument of counsel, the magistrate ruled that the showing proffered by the defense did not meet the requirements established in *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674], and denied the motion to quash and traverse.

The magistrate also denied a defense request for discovery of the identity of the informant on the basis that there appeared to be no reasonable possibility that the informant would provide evidence that would tend to

exonerate the defendant. Thereafter, the preliminary hearing took place and appellant was held to answer on the charges alleged against him.

In superior court, appellant moved to quash and traverse the search warrant and to suppress the evidence obtained as a consequence of the search of his residence under Penal Code section 1538.5. He again moved to discover and cross-examine the confidential informant. These motions were heard on June 20, 1989. The court, on request of counsel, read the testimony of appellant from the proceeding of September 27, 1988, and counsels' arguments on the earlier motions. The court also reviewed the affidavit of Deputy Miller in support of the search warrant. No request was made by either side to present further evidence and none was presented. The court denied the request to discover the identity of the informant, finding such disclosure was not material to the test of validity of the arrest. The court also denied the motion to quash and traverse the search warrant stating that on the limited evidence before it, it "[was] not prepared to find that [Deputy Miller's affidavit] was false or [made] in reckless disregard of the truth. . . ." The motion to suppress the evidence found during the search was likewise denied.

## DISCUSSION

Appellant contends that he has been denied his rights to be free from unreasonable search and seizure under the Fourth Amendment of the Constitution of the United States and to confront and cross-examine witnesses against him under the Sixth Amendment. We disagree.

### I.

██ The death of the person whose affidavit supported the issuance of a search warrant creates no new rights in the person or persons charged with crime as a consequence of evidence legally gathered pursuant to the search warrant, nor does such death relieve a defendant of the preliminary showing required under *Franks* v. *Delaware, supra*, 438 U.S. 154, before he or she is permitted to go forward to hearing on a motion to quash or traverse the warrant. Under *Franks,* a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. . . ." (*Franks* v. *Delaware, supra*, 438 U.S. at pp. 155-156 [57 L.Ed.2d at p. 672].) Further, "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. . . . [A defendant's offer of proof should include] affidavits or sworn or otherwise reliable statements of

witnesses, . . . or their absence [should be] satisfactorily explained." (*Id.* at p. 171 [57 L.Ed.2d at p. 682].)

■ In the case before us, no such substantial showing was made by appellant. His offer of proof consisted entirely of his testimony that the statement attributed to the informant was false, and that "no such [informant] exists." These self-serving conclusory statements constitute a general denial and fall far short of meeting the *Franks* requirement set forth above. Both the magistrate and the judge so found, and the record adequately supports their rulings. We affirm these rulings.

In so doing, we do not hold that the sole testimony of a defendant would, in every case, be insufficient to meet the preliminary showing required by *Franks.* Each case necessarily must be determined on its own facts and circumstances. Here the offer of proof was simply the inference raised through appellant's testimony that the affiant lied. Both courts below weighed this testimony against the information set forth in the affidavit in denying appellant's motion to quash and traverse, and no abuse of discretion is shown.

Although appellant's contention goes to the veracity of the affiant and not to whether affiant, with reckless and careless disregard for the truth, included the informant's statements in the affidavit, we note that Deputy Miller's affidavit sets forth a reasonable and appropriate effort on his part to corroborate the information he had received.

## II.

■ Appellant contends that his conviction should be reversed because his Sixth Amendment right to confront and cross-examine witnesses against him was infringed. Appellant argues that his ability to challenge the veracity of the facts contained in the affidavit was hampered by his inability to cross-examine the affiant, and that, at a minimum, he should have been permitted to discover the identity of the informant and to cross-examine this person, or to receive information from the court bearing on the veracity or lack thereof of the affidavit. In effect, appellant is contending that, in cases in which an affiant dies and cannot be called as a witness against an accused, the accused should be permitted to conduct a random search for evidence that might cast doubt on the affiant's veracity. Having earlier stated that the death of a search warrant affiant creates no new rights in an accused, we reject appellant's contention.

Both federal and state Constitutions guarantee the right of an accused to confront and cross-examine witnesses against him or her in trial or other

proceedings in court. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15). Neither Deputy Miller, who was unavailable because of his death, nor the confidential informant was called by the prosecution in a courtroom proceeding. ■ There was and is no burden on the prosecution to produce a witness simply because that person might have some knowledge related to events or charges before the court. (*People* v. *Stanley* (1967) 67 Cal.2d 812, 820 [63 Cal.Rptr. 825, 433 P.2d 913].)

■ There is no constitutional right to cross-examine the affiant of a search warrant simply because that person was the affiant. As set forth hereinabove, a defendant must make the preliminary showing required under *Franks* v. *Delaware, supra*, 438 U.S. 154, before a hearing is required in which the defendant's right to cross-examine such affiant might come into play. That did not occur in this case.

Likewise, there is no constitutional right to cross-examine an informant simply because that person gave information to a law enforcement officer which led to the issuance of a search warrant. Before an accused is entitled to discovery of an informant's identity, or to have a court conduct an in camera review or order discovery relating to the veracity of a search warrant affidavit based on said informant's statement, certain requirements must be met.

■ No disclosure of an informant's identity is required, as to the issue of an accused's guilt on charges before a court, where the informant is not a material witness on that issue. (*People* v. *Lanfrey* (1988) 204 Cal.App.3d 491, 502-503 [251 Cal.Rptr. 189].) ■ It is clear from the record in the case before us that the informant was not a witness to the search which took place several days after he or she provided information to Deputy Miller. It is also clear, given the circumstances of this case, there was no reasonable possibility the informant would have supplied evidence tending to exonerate appellant. (See *People* v. *Alderrou* (1987) 191 Cal.App.3d 1074 [236 Cal.Rptr. 740].) ■ In any event, when a defendant, by pleading nolo contendere to a charge, has admitted the truth of the allegations, the informant's evidence on the question of guilt no longer has significance and no review on appeal is required. (*People* v. *Martino* (1985) 166 Cal.App.3d 777 [212 Cal.Rptr. 45].)

■ The real question raised here by appellant is whether the court should have adopted a procedure to review the information provided by the informant in order to check on the veracity of the affiant and/or the informant before determining whether or not it was appropriate to order discovery on this matter. We hold that such a procedure, i.e., an in camera hearing, was not required on the facts before us.

Before a court is required to exercise its discretion to decide whether to conduct an in camera review or to order discovery relating to a warrant affidavit based on statements attributed to a confidential informant, a defendant must offer evidence casting some reasonable doubt regarding either the existence of the informant or the truthfulness of the affiant's report concerning the information furnished. (*People* v. *Luttenberger* (1990) 50 Cal.3d 1 [265 Cal.Rptr. 690, 784 P.2d 633].) It is not error to deny such a discovery motion where such motion, as here, is based entirely on conclusory assertions unsupported by any other evidence. We do not find any abuse of the lower court's discretion in this regard.

### DISPOSITION

No abuse of the court's discretion having been shown, we affirm the challenged rulings and judgment.

Spencer, P. J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 26, 1990.